**In the Matter of R. S. PINELLAS MOTEL PARTNERSHIP dba Ramada Inn South, Debtor.**

**No. 79–1545 C.**

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

July 18, 1980.

270

Don M. Stichter, Tampa, Fla., for R.S. Pinellas.

Michael Freedman, Tampa, Fla., for Richard L. Kane.

Zala Forizs, St. Pete, Fla., for First Federal Savings and Loan.

Domenic L. Massari, Tampa, Fla., for Joe Ash, trustee receiver.

## ORDER ON MOTION TO CONVERT OR TO DISMISS AND ORDER ON MOTION TO STRIKE BY RICHARD L. KANE AND ORDER ON MOTION TO DISMISS REORGANIZATION PROCEEDING FILED BY RICHARD L. KANE

ALEXANDER L. PASKAY, Bankruptcy Judge.

THIS IS a business reorganization case initiated by R.S. Pinellas Motel Partnership dba Ramada Inn South (R.S. Pinellas) under Chapter 11 of the Bankruptcy Code, a proceeding born in sin according to Mr. Richard L. Kane, a general partner in the entity involved in this proceeding. This is so because of an objection raised early in the proceeding by Mr. Richard L. Kane, (Kane), which objection remained dormant until it surfaced recently which placed the entire proceeding in a complex and somewhat confusing posture. In order to put the matters under consideration in the proper focus, a recap of the undisputed facts as they appear from the record of which this Court must and will take judicial notice, are in order and can be summarized as follows:

R.S. Pinellas is a partnership which was originally composed of two general partners, Richard L. Kane and one Richard Salpeter. Sometime in 1977 R.S. Pinellas acquired a motel facility located in St. Petersburg, Florida known as Ramada Inn South. At the time of the acquisition by this partnership, the facility was operated by Lops St. Pete Motel, Inc. (Lops) under a management contract. Lops is a Florida corporation in which Mr. Harold C. Chambers, III is the chief executive and the principal, if not the sole, stockholder. After acquisition of this facility by R.S. Pinellas, Lops remained in control of the day to day operation of the facility even though there was no formal contractual arrangement between R.S. Pinellas and Lops.

At one time, although it is not clear from this record when, and how, Mr. Chambers became a general partner in R.S. Pinellas, "replacing" Mr. Salpeter, one of the original general partners in R.S. Pinellas. Mr. Chambers, as president of Lops, remained the man in charge of the operation of the motel facility, the only property owned by and the only real business of R.S. Pinellas, the partnership. There is no evidence in this record that there was at any time a formal partnership agreement between Mr. Kane and Mr. Chambers and R.S. Pinellas, a partnership composed of Mr. Kane and Mr. Chambers, are created without a formal partnership agreement and created by either an oral agreement or by a tacit understanding of Mr. Kane and Mr. Chambers, a fact no way established by this record although one may infer the same from the conduct of the parties. It is clear that Mr. Kane, a wholesale distributor of alcoholic beverages in the State of Delaware never had anything to do with or was involved to any extent in the day to day operation of the motel facility, which was operated at the times relevant to this controversy as a Ramada Inn under a franchise agreement with Ramada Inns of America.

The record further reveals that on October 31, 1979, Mr. Chambers, on behalf of R.S. Pinellas, filed a Petition for Order for Relief under Chapter 11 of the Bankruptcy Code and on the same date, also filed a similar petition on behalf of Lops. There is no question that the partnership petition was signed only by Mr. Chambers. The list of creditors attached to the petition listed seven (7) creditors: First Federal Savings and Loan Association (First Federal) a secured creditor who holds a mortgage on the motel facility; Mr. Kane and Mr. Cham-

bers, the general partners of the R.S. Pinellas partnership; the Pinellas County Tax Collector; Lops, the corporation in charge of the operation of the motel facility; and an insurance company and an accounting firm. It is noteworthy that the Ramada Inns of America, the franchisor, was not scheduled as a creditor by R.S. Pinellas even though it was evident and it is without any serious dispute that R.S. Pinellas was seriously delinquent in its obligation to Ramada Inns of America, particularly in the payment of royalties under the franchise agreement. By far the largest creditor scheduled of the partnership was Lops, the managing corporation.

The record further reveals that on November 8, 1979, this Court entered an order pursuant to § 1102(a)(1) and appointed an official creditors' committee and Mr. Richard L. Kane was appointed as one of the members of the committee. Notwithstanding the entry of this Order, on November 11, 1979, Mr. Kane filed a Motion and sought appointment to be a member of the Official Creditors' Committee. On the same date, Mr. Kane also filed a motion and sought an appointment of a "Trustee or Receiver" (sic). This motion alleged, inter alia, in support of the relief sought, that due to gross mismanagement, incompetency, dishonesty and irregularity in the operation of the motel facility by Lops, the Ramada franchise was in danger of being cancelled and terminated which was a valuable asset of the partnership and "but for the institution of these proceedings, which were initiated prior to the notification of the termination of the franchise, the franchise would have been lost."

The record further reveals that on November 19, 1979, this Court entered an order and denied Mr. Kane's motion. The record further reveals that the meeting of creditors, called pursuant to § 341 of the Bankruptcy Code, was held on November 30, 1979 at which time the attorney for Mr. Kane appeared and actively participated in the meeting and questioned Mr. Chambers extensively.

The record further reveals that the petition for relief under Chapter 11 of the Code was only signed by Mr. Chambers on behalf of the partnership, and the same was not served on Mr. Kane, the non-joining partner, as required by Interim Rules as adopted in this District, Local Rule 1004(b). There is no doubt, however, that Mr. Kane was fully aware of the pendency of the proceeding involving R.S. Pinellas and, as noted earlier, it was not until November 26, 1979, after the receipt of the notice of meeting of creditors sent on November 8, 1979, and after the receipt of the order denying his motion which sought an appointment to the creditors' committee on November 19, 1979, that he filed a pleading which is really the only formal legal basis of the challenge now under consideration, after approximately seven (7) months and after the occurrence of many significant events. Inasmuch as the crux of the matter which governs the fate of the proceeding involving this debtor is based on the resolution of the issues raised in a pleading filed by Mr. Kane, it is proper to summarize the basic and relevant portion of this pleading. This pleading entitled "Answer" basically challenged the authority and the power of Mr. Chambers to file a petition for relief under Chapter 11 as a "voluntary case" because the petition was not filed with the knowledge and consent of Mr. Kane, a general partner. This pleading also attempted to incorporate in paragraph 5, a pleading which might be construed to be a counterclaim judging from the title of the pleading and, most importantly, from the prayer for relief which sought not only a dismissal of the "voluntary case" but also a money judgment against Mr. Chambers for compensatory and punitive damages.

It is without dispute that this pleading was never treated as an answer to an involuntary petition pursuant to § 303(b)(3) of the Code and the ability or willingness of the partnership to generally pay its debts as they became due was never put in issue by the answer.

The record further reveals that Mr. Kane, through his counsel of record the law firm of Levine, Freedman, Hirsch & Levinson, actively participated from the outset in the

reorganization proceeding. As noted earlier, Mr. Kane filed an answer; Mr. Kane appeared at the Meeting of Creditors; Mr. Levine, his counsel, examined Mr. Chambers at the Meeting of Creditors and thereafter, Mr. Kane, through his counsel, appeared at least five (5) times during the pendency of these proceedings according to the attendance report furnished to the Court by the Court Reporter. In light of these uncontroverted facts, the lack of service of the petition on him appears to have no significance and bearing on the true legal character of a voluntary petition filed by only one partner on behalf of the partnership. It further appears from this record that Mr. Kane became actively involved in the proposed sale of the motel facility to one Mr. Morrell, that he was not only agreeable but anxious to conclude the sale to Mr. Morrell and attended an aborted closing of the sale. In this connection, it should be pointed out that after the appointment of Mr. Ashe as Trustee for the partnership, Mr. Kane actively sought prospective purchasers, consulted with the Trustee and even now would be willing to execute all documents necessary if an acceptable purchaser could be found. The record further reveals that during the entire proceeding, the estate incurred substantial expenses in connection with the operation of the motel facility which was operated by Lops and later by the Trustee and that the partnership was delinquent in its obligation to pay real estate taxes and mortgage payments. The fact of the matter is that the Trustee was forced to borrow monies from First Federal in order to keep the motel operating, which loan was granted super priority under the applicable provisions of the Code, § 364(c)(1), and of course, the Trustee incurred expenses for legal representation and also rendered valuable service to the estate for which he is entitled to be compensated.

The record further reveals that after the proposed sale to Mr. Morrell aborted, there arose a now pending adversary proceeding involving the earnest money deposit made by Mr. Morrell to which conflicting claims are being interposed, which adversary proceeding might produce funds for the estate if the estate is successful. Neither the Debtor nor any other party of interest filed a plan of reorganization and it appears that the reorganization proceeding reached an end, and there is no realistic basis to suppose that the partnership will be able to achieve rehabilitation under this Chapter. Inasmuch as the Trustee concluded that the continuing operation of the business would be wasteful and not feasible economically, the Trustee filed an application and sought permission to close down the establishment. In due course, the Court considered the Trustee's application and on May 9, 1980 this Court entered an order, after a hearing which was attended by Mr. Freedman, who supported the Trustee's application, and the Court authorized the Trustee to discontinue the business operation forthwith without opposition by anyone.

The record further reveals that the Ramada Inns of America filed an Application To Dismiss or Convert the proceeding pursuant to § 1112 of the Bankruptcy Code which Application was not considered in light of the then existing possibility of selling the motel facility to Mr. Morrell. When the Morrell sale fell through, the matter was rescheduled and the same having been considered on April 21, 1980, this Court entered an order which denied the application to dismiss or convert without prejudice. It further appears from the record that a hearing was scheduled for May 14, 1980 to consider a motion to dismiss the entire proceeding, which motion appears from the original answer described earlier filed by Mr. Kane. There was also an oral motion by First Federal to convert the proceeding to a Chapter 7 liquidation case. On May 16, 1980, this Court entered an Order to Show Cause on its own motion and directed the partnership debtor to appear before the undersigned on May 30th to show cause why the order should not be entered dismissing the Chapter 11 proceeding or in the alternative why the proceeding should not be converted to a liquidating proceeding under Chapter 7 of the Bankruptcy Code. On the date indicated, the Court heard argument of counsel for the respective parties including counsel for Mr. Kane who was not present and concluded that there were un-

resolved factual disputes which could not be resolved from the court record. For this reason, a final evidentiary hearing was re-scheduled in order to complete the record and receive testimony in support of the respective contentions of the parties.

It is the contention of First Federal that while Mr. Kane did not consent to the original petition and did from the beginning treat the same as an improper voluntary case, through his conduct in actively participating in the proceeding, through his willingness to gain the benefits and advantages of the Chapter 11 proceeding and the protective umbrella of the Bankruptcy Court, he is now estopped to urge that the original petition was improper and that the proceeding, therefore, cannot be converted into a liquidating proceeding, but rather should be dismissed. First Federal and the Trustee urge, in the alternative, that even if the doctrine of estoppel is not applicable in the present instance, the Court should consider the petition to be an involuntary petition pursuant to § 303(b)(3) and since there was no responsive pleading ever filed by Mr. Kane, the partnership is in default and it is now proper to enter a nunc pro tunc Order For Relief and treat the case as an involuntary Chapter 11. In support of this proposition, they urge that since under § 303(h) of the Code, the entry of the Order for Relief is proper in an involuntary case upon the mere showing that the Debtor is generally not paying its debts as they become due and since this record is replete with evidence that the Debtor did not, in fact, pay the real estate taxes and mortgage payment to First Federal and it has scheduled undisputed debts to an insurance agency and to a certified public accountant firm, there is no need or justification to try that issue even though they concede as they must that the inability or unwillingness of the partnership, R.S. Pinellas, to pay its debts generally was never really put in issue and actually tried. This being the case, so argues First Federal and the Trustee, the original petition was properly filed either as a voluntary or as an involuntary case and, therefore, it is proper to convert this to a liquidating proceeding under Chapter 7 for the following reasons: First, the reorganization proceeding is no longer a viable proposition since no plan has been filed or can be filed; second, because there are assets which could be turned over for the benefit of the estate; and, third, because the orderly administration under Chapter 7 would be in the best interest of all parties and is the only way to assure that the costs incurred during the administration will be paid.

In response to these contentions, it is Mr. Kane's contention that he has consistently taken the position that the original petition was improper as a voluntary case; that he did not consent to the filing of the petition; that the issue of treating the petition as an involuntary case was never presented; and, that he never had an opportunity to file a controverting answer and he is entitled to show and establish that the partnership had no debts other than the mortgage payment and the real estate taxes and since these were secured obligations, it would be improper to enter an Order for Relief at this time and maintain the case as an involuntary Chapter 11 and then convert the same into a proceeding under Chapter 7 to be processed as a liquidation case.

■ Considering the contention of First Federal that Mr. Kane is estopped to oppose a conversion, it is well to state that this proposition is amply supported by this record. Mr. Kane did actively participate in the proceeding from the very outset; he sought an appointment to the Creditors' Committee and was appointed to serve on the Creditors' Committee; he did actively participate in the proposed sale to Mr. Morrell; and, he did consider the Ramada franchise to be a valuable asset and took the position that only through the institution of these proceedings was the franchise saved. Even after the Morrell sale aborted, he actively sought and explored the possibilities of finding an acceptable buyer and even now would be willing to consent to the sale of the facility if a buyer could be found.

■ In light of the foregoing, Mr. Kane is hard pressed to convince anyone that he did not, in fact, consider the Chapter 11 proceeding to be proper so long as it served his own purpose. He was not reluc-

tant to reap the benefits of the Chapter 11 proceeding and he reasserted his antagonistic position to the proceeding only when it appeared that a possible conversion might place him personally in jeopardy, since as a general partner he may be held liable for any debts of the partnership which cannot be, and will not be, satisfied through the liquidation process under Chapter 7. But even assuming for the purpose of discussion that Mr. Kane is not estopped because of his conduct to urge now that the petition was improperly filed because of his lack of consent, a position which this Court rejects outright, it is quite clear under the law that a petition filed on behalf of a partnership by not all the general partners must be treated as an involuntary petition and that the non-assenting partner or partners have a duty to controvert the petition and in the absence of a controverting answer, the Court is authorized to enter an Order for Relief under the particular Chapter, be it a Chapter 7 or a Chapter 11 pursuant to § 303(h) of the Code. Thus, whether or not the proceeding is properly maintained as a voluntary or as an involuntary Chapter 11, this Court is satisfied that the case is properly before this Court and therefore in light of the obvious loss of possibility to accomplish reorganization, it is proper to consider at this time either a dismissal or a conversion into a Chapter 7 case pursuant to § 1112 of the Code. Furthermore, in light of the fact that during the pendency of the Chapter 11 proceeding the estate incurred debts and obligations; that there has been an appointment of a Trustee which was not opposed by Mr. Kane but, on the contrary, was consented to since he himself at one point in time sought the appointment of a Trustee; and because the Trustee incurred expenses in preserving and safeguarding the property, it would be unjust and improper to dismiss the proceeding since none of these expenses for which the estate is definitely responsible would be met if the case were dismissed.

At the outset of the present proceeding, Mr. Kane filed a motion to strike the application to convert filed by First Federal on the basis that First Federal is a fully secured creditor and has no standing to file such an application. In light of the fact that this Court entered an order to show cause on its own motion to consider a dismissal or conversion, Mr. Kane's motion to strike is moot and it should be denied.

In accordance with the foregoing, it is

ORDERED, ADJUDGED AND DECREED that the original petition filed by Mr. Chambers on behalf of the partnership, whether treated as a voluntary or involuntary case be, and the same hereby is, held to be properly filed. It is further

ORDERED, ADJUDGED AND DECREED that in light of the Debtor's inability to obtain rehabilitation under Chapter 11, the reorganization case shall be dismissed and the case shall be converted pursuant to § 1112(b)(1)(2)(4). It is further

ORDERED, ADJUDGED AND DECREED that after entry of this order, if no notice of appeal is filed and no stay pending appeal is obtained, the Clerk shall schedule a meeting of creditors pursuant to § 341 of the Bankruptcy Code and the trustee appointed in the Chapter 11 case, Mr. Joseph Ashe be, and the same hereby is, appointed interim trustee pursuant to § 701(a).