**In re THOMAS, INC., d/b/a Satch's, Debtor.**

**Bankruptcy No. 83–00467–L.**

United States Bankruptcy Court, D. Massachusetts.

June 8, 1984.

John D. Hanify, Hanify & King, Boston, Mass., for debtor.

Herbert C. Kahn, Boston, Mass., for Creditors' Committee.

Richard L. Levine, Hill & Barlow, Boston, Mass., for H.N. Gorin Associates.

M.G. Sherman, M.G. Sherman & Co., Boston, Mass., accountant.

## MEMORANDUM AND ORDER

### RE: FINAL ALLOWANCES

THOMAS W. LAWLESS, Chief Judge.

■ Before the Court are the final fee applications of the various professionals who have rendered services in this reorganization proceeding. After appropriate notice, hearings on these applications were held on March 27 and May 31, 1984. Three objections to the application of Hanify & King, debtor's counsel, were originally filed, but the objection of the United States Trustee was subsequently withdrawn after debtor's counsel demonstrated to the United States Trustee's satisfaction its entitlement to the full amount requested. No objections have been filed with respect to the fee applications of Herbert C. Kahn, counsel to the creditors' committee, and M.G. Sherman, accountant. Nevertheless, this Court has a duty independent of any objection to determine the reasonableness of the amounts requested. The legal principles and standards applicable in granting final fee awards have been enunciated in prior opinions of the now-defunct Bankruptcy Appellate Panel, see In re Casco Bay Lines, Inc., 25 B.R. 747 (Bankr.1st Cir.1982), and by this Court, see, e.g. In re Bolton Hall Nursing Home, et al., 40 B.R. 657 (Bankr.D.Mass.1984) and, to the extent relevant, are incorporated herein in the interest of judicial economy. Based upon my own observation of the quality and quantity of the work performed and the results obtained, I find as follows:

■ Debtor's counsel, principally John D. Hanify, Esq., was primarily responsible for the favorable results obtained in this proceeding. At the outset of the case, the prospects for a significant return to creditors appeared bleak. As is the case in so many of the restaurant and lounge businesses that come before the Court, the debtor's tangible assets were minimal. The debtor's principal asset consisted of its leasehold interest in a building in the Back Bay; the value of the leasehold interest was entirely speculative at the commencement of the case. It was apparent that the past performance of the debtor suggested that its business operation could not be sustained without the infusion of funds by third parties. It was equally apparent, however, that an immediate sale of the debtor's assets would not have generated a favorable sales price. Debtor's counsel, by means of a variety of devices, was able to keep the business operating while he maximized the value of the debtor's tangible and intangible assets. Debtor's counsel negotiated loans of $45,000 through two separate borrowings that enabled the debtor to operate during the summer of 1983. In the fall of 1983, when continued operation by debtor's management became impossible, debtor's counsel negotiated an interim management agreement with a prospective third party plan proponent that provided for the funding of the plan of reorganization and the underwriting of losses during the period of management. The interim management agreement not only assured the continued operation of the debtor's business, but also put the prospective purchaser of the building (in which the debtor's leased premises were located) on notice of the serious intention of the debtor and the plan proponent of their intention to utilize the full term of the lease.

Other litigation initiated by the debtor's counsel was equally successful in maintaining the debtor's operations until the best possible price could be obtained. As a consequence of the landlord's failure to pay water bill arrearages, the Boston Water and Sewer Commission ("BWSC") threatened to terminate water service to the debtor. To solve this critical problem, debtor's counsel filed an application for a restraining order against both the landlord and the BWSC, repeatedly appeared before the Court and ultimately succeeded in obtaining relief that enabled the debtor to continue its operations.

Additionally, litigation arose out of the imminent prospect of a sale of the building in which the debtor had a leasehold interest to a third party. See 37 B.R. 387. The debtor filed an adversary proceeding in which it asserted the existence of a joint venture with the landlord and a claim of ownership in the leased property. Hotly contested by the landlord and the prospective third party purchaser of the building, the joint venture claim was ultimately rendered moot when the purchaser of the building acquired the debtor's assets, including the joint venture claim, for a price substantially in excess of the plan of reorganization filed by the interim management group. Among other things, the confirmed plan of reorganization filed by the acquirer of the building provides for a sale of all assets of the debtor in return for a total dividend which may be available to unsecured creditors of $238,000 payable over four years (seventy percent x $340,000). The plan also provides that the dividend available to unsecured creditors will be reduced one dollar for every dollar by which the allowed administrative claims exceed $140,000.

Hanify & King seek, by way of an original and two amendments to their application, a final allowance of fees in the amount of $70,528 and reimbursement of expenses of $1,559.12. The fee application includes a request for an upward adjustment of debtor's counsel's lodestar in the amount of $5,000 for the results which have been obtained in this proceeding. Stanhope Street Associates ("Stanhope"), the debtor's landlord, filed a one paragraph objection to the fee requested by debtor's counsel stating that it is "excessive, unreasonable and substantially was not necessary or required...". H.N. Gorin Associates ("Gorin"), the third-party plan proponent, has also filed an objection to the fee application of debtor's counsel. In its Memorandum in opposition to Hanify & King's fee application, Gorin contends that no fee allowance should be made for what it estimates to be approximately $17,000 in services rendered in connection with the joint venture suit on the basis that these services did not confer a benefit upon the estate. Gorin also filed objections to the request for the $5,000 upward adjustment and argues that the Court should award Hanify & King $42,500.

In assessing the necessity for the type and amount of work performed by debtor's counsel, I believe particular emphasis should be placed on the circumstances of this debtor on the day of the filing of the Chapter 11 petition and the opposition encountered during the proceedings. While the debtor's leasehold interest ultimately was found to be a valuable asset, from the debtor's viewpoint its terms were onerous. Most, if not all, of the building's debt was being serviced by the debtor-tenant under the lease. If a buyer for the lease could not be found, it appeared that the only hope for a return to creditors was if the debtor could establish an ownership interest in the premises. Moreover, from the viewpoint of maximizing the value of the debtor's assets, it was obvious that the lease had a particularly high value to the ultimate purchaser of the building. In light of these facts and the debtor-in-possession's duty to pursue all of its potential cause of actions, the assertion of the joint venture claim was clearly proper and necessary.

Once asserted, the joint venture action precipitated a barrage of motions from both the landlord and the prospective purchaser of the building. A substantial portion of the time expended by debtor's counsel on the joint venture action was in defense of the propriety and legal basis of bringing the law suit. To the extent that debtor's counsel expended such a significant amount of time on a suit that never was brought to full resolution, as well as in resolving the BWSC dispute, opposing the motion for recusal and in administering this estate, responsibility for this time must be shouldered by the landlord and, to a somewhat lesser extent, Gorin. *See, e.g., Wolf v. Frank,* 555 F.2d 1213, 1217 (5th Cir.1977) ("Obviously, the more stubborn the opposition the more time would be required"); *Perkins v. New Orleans Athletic*

*Club,* 429 F.Supp. 661, 667 (E.D.La.1976) ("Those who elect a militant defense...[are responsible for] the time and effort they exact from their opponents.").

Gorin contends that the joint venture suit was unnecessary in that the excellent results obtained in this proceeding would have been obtained irrespective of that suit. I disagree. As the plan proponent, Gorin has a monetary interest in seeing that the allowed administrative expenses do not exceed $140,000 because administrative expenses in excess of that amount have to be immediately paid in full rather than over time.[1] While it may be galling to Gorin to pay for an action that impeded its acquisition of title to the building, it must be recognized that Gorin's plan to acquire the debtor's assets, including the leasehold interest and the joint venture claim, was filed only after the Court ruled favorably on the propriety of the debtor's memorandum of lis pendens. I find that the asserted joint venture claim provided additional motivation for Gorin's plan of acquisition. However, I also find that the time expended on the joint venture claim to be somewhat excessive in view of the results obtained. Accordingly, I deduct twenty percent from the approximately $17,000 worth of services performed on this action, a total deduction of $3,400.

Based upon my review of the time records and the work performed, I find the time expended and the lodestar rate charged by this applicant appropriate. However, I do not find that the quality of counsel for the debtor's representation was superior to that one should reasonably expect in light of the hourly rates charged. *See Blum v. Stenson,* — U.S. ——, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Accordingly, counsel's request for an upward adjustment is denied.

For these reasons, John D. Hanify and the law firm of Hanify & King are awarded a final fee of $62,128 of which $47,000 has been previously paid as an interim allowance and $15,128 is to be paid. In addition, this applicant is allowed final reimbursement of expenses of $1,559.12 of which $1,559.12 has been previously paid leaving a balance of zero.

After review of the time records of Herbert C. Kahn, Esq., counsel to the creditors' committee, and the work performed this applicant is awarded a final fee of $16,500 of which $13,000 has been previously paid as an interim allowance and $3,500 is to be paid.

Similarly, M.G. Sherman & Co., accountants, is awarded a final fee of $3,400 of which $2,500 has been previously paid as an interim allowance and $900 is to be paid.

The fee application of Stanhope Street Associates, the debtor's landlord, will be considered when this applicant files the papers it wishes to have the Court consider in conjunction with its fee application.

So Ordered.

---

[1]. The Court is sensitive to the fact that the dividend to unsecured creditors will be reduced to the extent that the allowed administrative expenses exceed $140,000. However, the Court is equally aware that the allowance of fees can not be dictated by a plan proponent. It is this Court's duty to determine the reasonableness of the amounts requested and to make appropriate allowances.