**In re ZERODEC MEGA CORPORATION, Debtor.**

**Bankruptcy No. 82–05578G.**

United States Bankruptcy Court,
E.D. Pennsylvania.

June 8, 1984.

Marvin Krasny, Sara Beth Kalb, Adelman, Lavine, Krasny, Gold & Levin, Phila-

delphia, Pa., for debtor, Zerodec Mega Corporation.

Samuel M. Tollen, Chester, Pa., for objecting creditor, Chester Development Office.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge:

The issue before us is whether we should approve the debtor's application to employ the chief executive officer of a chapter 11 debtor on the terms set forth in said application. For the reasons stated herein we will authorize the employment but reduce by one-third the individual's proposed salary.

The facts of this case are as follows:[1] In 1978 Robert Barry ("Barry") founded Zerodec Mega Corporation ("the debtor") and apparently since that time he has been the debtor's chief executive officer. From the creation of the debtor through 1980 Barry did not draw a salary but in 1981 he did begin doing so although he could not recollect the amount. He received a salary of $1,200.00 per week from the beginning of 1982 until approximately May of that year, at which time he merely allowed the salary to accrue due to the debtor's financial straits. The debtor filed a petition for reorganization on November 19, 1982, and filed the application at issue approximately five weeks later. Paramount Industries, Inc. ("Paramount"), and the Chester Development Office, Inc., which are two creditors of the debtor, filed objections to the application although the objection of the latter creditor has since been withdrawn. Since the filing of the application the debtor has apparently been paying Barry a salary of $1,200.00 per week, although no adjudication of the request has previously been made.

The former bankruptcy statute, the Bankruptcy Act of 1898 ("the Act"), stated that in a reorganization "the trustee or debtor in possession may employ officers of the debtor at rates of compensation to

be approved by the court." § 191 (former 11 U.S.C. § 591). The Supreme Court held that this section vested the bankruptcy court with "authority to pass in advance upon the qualifications and the salary of an officer of the Debtor before he assumes or continues in office." *Wolf v. Weinstein*, 372 U.S. 633, 648, 83 S.Ct. 969, 979, 10 L.Ed.2d 33 (1963). The "[c]ourt is given supervision over the amount of compensation so that the retention of the debtor's officers will be based on their actual worth and not on their desire to perpetuate their tenure or control at the expense of the debtor's creditors and stockholders." 6 *Collier on Bankruptcy* ¶ 8, 14[1] at 1430 (14th ed. 1978). The Code contains no provision analogous to § 191 of the Act, although the substance of that section has arguably been incorporated in 11 U.S.C. § 327(a) of the Code which states as follows:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

The requirement of disinterestedness found in § 327(a) is undercut in chapter 11 cases by 11 U.S.C. § 1107(b) which states, "Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." The few reported cases under the Code on the subject are in agreement that the bankruptcy court has ample authority to rule on the employment of the debtor's officers and fix their compensation. In the first case of importance on the subject, *In Re Lyon & Reboli, Inc.*, 24 B.R. 152 (Bkrtcy.E.D.N.Y.1982), the court held that

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy

Rule 7052 (effective August 1, 1983).

the reference to "professional persons" in 11 U.S.C. § 327(a) did not apply to a debtor's officers since the alleged profession did not comport with the other listed professions in that section under the rule of statutory construction of *ejusdem generis.*[2] Nonetheless, the court also held that it could review the appointment of officers and their salaries under 11 U.S.C. § 105(a) which provides that the "bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." In the other case, *In Re Schatz Federal Bearings Co., Inc.,* 17 B.R. 780 (Bkrtcy.S.D.N.Y. 1982), the court held that § 327(a) did govern the employment of the debtor's officers.[3] This position is supported by a statement in *Collier* which discusses § 1107(b) in the following terms:

> Section 1107(b) states that, notwithstanding section [327(a)], a person is not disqualified from employment under section [327] by a debtor in possession solely because of his employment by or representation of the debtor prior to the commencement of the case .... But for this exception, section 1107(a)[4] would subject the debtor in possession to the strict limitations contained in section 327(a). Thus, the debtor, as debtor in possession, would be barred from retaining as "professional persons" the services of its directors, officers, employees or investment banker.

5 *Collier on Bankruptcy* § 1107.03 pp. 1107–7 to 1107–8 (15th ed. 1983). Thus, the clear implication of the quoted authority is that, excluding the bar on disinterestedness, in chapter 11 cases the employment of officers by the debtor in possession is governed by § 327(a).

The result in *Schatz* is also supported by the legislative history of § 1107 which states in part that the debtor in possession "is required to perform the functions and duties of a chapter 11 trustee (except the investigative duties). He is also subject to any limitations on a chapter 11 trustee, and to such other limitations and conditions as the court prescribes cf. [sic] *Wolf v. Weinstein,* 372 U.S. 633, 649–50 [83 S.Ct. 969, 979–980, 10 L.Ed.2d 33] (1963)." S.Rep. No. 95–989, 95th Cong., 2d Sess. 116 (1978), reprinted in 1978 U.S.Code Cong. & Admin. News 5787, 5902. Note that the history refers to *Wolf* which is the case discussed

---

**2.** "Ejusdem generis" has been defined as follows:

> Ejusdem generis /iyjasdam jenaras/. Of the same kind, class, or nature. In the construction of laws, wills, or other instruments, the "ejusdem generis rule" is, that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned. *U.S. v. LaBrecque,* D.C.N.J., 419 F.Supp. 430, 432; *Aleksich v. Industrial Accident Fund,* 116 Mont. 127, 151 P.2d 1016, 1021. The rule, however, does not necessarily require that the general provision be limited in its scope to the identical things specifically named. Nor does it apply when the context manifests a contrary intention.
> Under "ejusdem generis" canon of statutory construction, where general words follow the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general class as those enumerated. *Campbell v. Board of Dental Examiners,* 53 Cal.App.3d 283, 125 Cal. Rptr. 694, 696.

*Black's Law Dictionary* 464 (5th ed. 1979).

**3.** See also *In Re Seatrain Lines, Inc.,* 13 B.R. 980 (Bkrtcy.S.D.N.Y.1981), in which the court stated that: "In the context of a debtor proceeding, persons in occupations ordinarily considered professions are necessarily professional whose retention by the estate requires court approval. For the purpose of section 327(a), 'professional person' *is limited to persons in those occupations which play a central role in the administration of the debtor proceeding.*" Id. at 981. In the case at bench the chief executive officer of the debtor in possession is certainly an individual who plays a central role in the administration of the debtor proceeding and thus would be a professional person under the *Seatrain* rule.

**4.** Section 1107(a) states as follows:

> (a) Subject to any limitations on a trustee under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(a), (3), and (4) of this title, of a trustee serving in a case under this chapter.

above that construed § 191 of the Act as giving the bankruptcy court the power to approve and fix the salaries of the officers of a debtor in possession.

■ Although we agree with *Schatz* and *Lyon* that the employment of the debtor's officers is subject to court scrutiny, we find that the method used in *Schatz* is preferable since the statutory framework established by §§ 327 and 328 provides an express treatment of the subject of employment with the requisite safeguards and restrictions which would be applicable to § 105 only by analogy. Having established our authority to review the retention of employment of a debtor's officers and their salaries we will now address Paramount's objection.

■ The parties are in apparent agreement that the debtor acted properly in retaining the services of Barry, but Paramount contends that a salary of $1,200.00 per week is excessive in light of the debtor's financial condition. We begin our analysis by noting that Barry's salary history with the debtor is somewhat less than stable. As stated above Barry drew no salary from his founding of the debtor in 1978 through 1980 and what salary he drew in 1981 he could not recollect. Only for approximately four months in 1982 did Barry collect a weekly salary of $1,200.00, after which time he refused to draw additional funds due to the debtor's dire financial condition. The fixing of such a salary by the debtor for its chief executive officer on the eve of insolvency after such officer had received no salary or a salary of undisclosed amount for all prior times in the debtor's past raises the implication that the figure fixed by the debtor does not accurately reflect the value of the officer's salary. A preference gained by a high ranking insider of the debtor is a possibility which cannot be dismissed lightly. The prepetition fixing of an insider's salary by the debtor is occasionally done with an eye toward the postpetition filing by the debtor of an application, such as the one at bench,

for approval of that salary by the bankruptcy court. Although we impute to the debtor or Barry no improper acts or motivation, we have referred to the above possibilities merely as support for the long standing general rules that (1) insider transactions are subject to greater scrutiny than "arms length" transactions and that (2) the usual burden of proof which is placed on the objecting party is reversed and must be borne by the insiders. *Pepper v. Litton*, 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939); *Goldberger v. Bross (In Re Complete Drywall Contracting, Inc.)*, 11 B.R. 697, 699–700 (Bkrtcy.E.D.Pa.1981).

■ Although the debtor introduced Barry's testimony to prove that Barry had done substantial work and produced significant savings for the debtor, there is no testimony of record which would fix the value of services in the open market comparable to Barry's. Thus, the debtor has failed to meet its burden of proof. Nevertheless, a denial of all compensation would certainly be detrimental to the debtor since a condition of gratis employment would most likely cause Barry to execute his duties with dampened zeal, if he would continue to work at all. Since Paramount conceeds that Barry's services are valuable and essential to any possibility of a successful reorganization we will merely reduce the proposed salary figure by one-third to $800.00 per week.[5]

---

5. Local Bankruptcy Rule 4005, which had been in effect on the filing of the application, states that the compensation to be paid to an officer of the debtor cannot exceed the salary said officer earned during the ninety day period immediately preceding the filing of the petition. This provision, of course, does not preclude a reduction in said salary.