### In re ATHOS STEEL AND ALUMINUM, INC., Debtor.

### Bankruptcy No. 86–01486.

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 27, 1987.

See also, D.C., 71 B.R. 525.

Myron Bloom, Adelman Lavine Krasny Levin & Gold, Philadelphia, Pa., for debtor, Athos Steel and Aluminum, Inc.

Horace A. Stern, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for objector, Jay Wechsler.

## OPINION

BRUCE FOX, Bankruptcy Judge:

On March 31, 1986, Athos Steel and Aluminum, Inc. ("Athos Steel") filed a petition under chapter 11 of the Bankruptcy Code and since then has continued to operate its business as debtor in possession. On May 14, 1986, Athos Steel filed a Notice of Intention to Pay Compensation to Officer

pursuant to Local Bankr.Rule 4002.1.[1] The notice stated that the debtor intended to retain its chief executive officer and treasurer, David Wechsler, and pay him at his current salary, $87,646.00 per year. The notice also stated that any creditor or party in interest objecting to David Wechsler's retention or his salary should file an objection after which a hearing on the objection would be scheduled. On August 3, 1986, Jay Wechsler, the brother of David Wechsler, filed the sole objection in this matter, asserting that compensation should be set at $45,000.00 annually. A hearing was held on October 16, 1986.

For the reasons explained below, I hold that: (1) Jay Wechsler is not a party in interest and therefore may not object to David Wechsler's retention and compensation; (2) even in the absence of an objection, the bankruptcy court has the power to review and set the compensation which the debtor may pay its chief executive officer; and (3) David Wechsler's annual salary for his work at Athos Steel will be set at $70,000.00 per year.

## FINDINGS OF FACT

1. David Wechsler is chairman of the board, president and treasurer of Athos Steel. (N.T. 34).

2. David Wechsler is a graduate of Cornell University. He also has received an M.B.A. from Harvard Business School. (N.T. 34).

3. He has been employed by Athos Steel since 1967. He began as Vice President of Marketing and later became Executive Vice President. In 1981, he obtained his position as Chairman of the Board. (N.T. 35).

4. Athos Steel is, in part, a family owned business. David Wechsler's father, at least in the past, had a significant role in the operation of the business. (N.T. 35, 94–95).

5. David Wechsler's highest annual salary was in 1981 when he received $99,-600.00. (N.T. 36, 86). At that time, David Wechsler's father was on the board of directors. (N.T. 86).

6. His salary was set as a result of his direct discussions with the attorneys who represent Athos Steel. It is unclear from the record, however, the degree to which the attorneys were independent, particularly during the period after David Wechsler became chairman of the board. (N.T. 36–37, 93–94).

7. As a result of business losses beginning in 1982, David Wechsler's annual salary was reduced following discussions he

1. Local Bankr.Rule 4002.1 provides in pertinent part:

(a) After the filing of a petition, compensation may be paid to the debtor, if an individual, or to the members of a partnership, or to an officer of a corporation at the rate specified in paragraph (b) only if the debtor complies with the notice requirements and time limits specified in paragraphs (c) through (g) above.

(b) The maximum compensation which may be paid according to this rule is the annual rate of compensation as of the 90th day prior to the filing of the petition unless the court, for cause shown, orders otherwise.

\* \* \* \* \* \*

(f) The notice to be mailed pursuant to this rule shall contain the following information:

(1) The name of the debtor, or the name of each member of a partnership, or the officers of a corporation, whichever is applicable;

(2) A description of the position and duties of each person named in subparagraph (i) above;

(3) The annual rate of compensation paid as of the 90th day prior to the filing of the petition and the annual rate of compensation being paid subsequent to the filing of the petition to the persons named above; and

(4) A statement substantially as follows: Any creditor or other party in interest who objects to the continued retention of any of the above named individuals or to the salary now being paid to such individuals should file with the clerk of the Bankruptcy Court, whose address is (give address of appropriate division of clerk's office), a written objection specifying the grounds thereof and serve a copy of such objection upon the debtor. Thereupon, the clerk will schedule such objection for a hearing before the Bankruptcy Court.

(g) The notice described above shall be filed with the clerk on or before the 45th day following the filing of the petition and such notice filed with the clerk shall be accompanied by a certification of service setting forth the parties to whom the notice was mailed.

had with Athos Steel's owners. (N.T. 94–95).

8. Also as a result the debtor's business losses, three members of the management staff left Athos Steel: the president, executive vice president and general manager. (N.T. 45).

9. In addition to his duties as chairman of the board of Athos Steel, David Wechsler assumed the duties of the management personnel who left the company. (N.T. 45–47).

10. In addition to his duties with Athos Steel David Wechsler is also the president of Athos Realty Co. ("Athos Realty"). (N.T. 49).

11. Athos Realty is owned almost entirely by Athos Steel. Athos Steel is Athos' Realty's sole tenant. (N.T. 49, 91).

12. Since January 1, 1986, David Wechsler has received an annual base salary of $87,000.00 from Athos Steel. (N.T. 74).

13. He also receives from Athos Steel the use of an automobile which has a value of $5,000.00 per year and the use of credit cards which has a value of $1,000.00 per year. (N.T. 88).

14. As president of Athos Realty, David Wechsler receives annual compensation of $29,400.00 per year. (N.T. 88–89).

15. David Wechsler spends approximately 48 to 50 hours per week on the affairs of Athos Steel and Athos Realty. He estimates that approximately four to six hours per week of this time is devoted to the business of Athos Realty. (N.T. 48, 89–91).

16. The gross annual sales for Athos Steel for the year ending September 1985 were $23 million and were between $16 and $17 million for the year ending September 1986. For the two months preceding the hearing in this matter, gross annual sales were running at a rate equivalent to $11.5 to $12 million annually. (N.T. 96).

17. Jay Wechsler, the objector herein, is the brother of David Wechsler. (N.T. 5).

18. Jay Wechsler is not a creditor of either Athos Steel or Athos Realty. (N.T. 5, 6).

19. Jay Wechsler has never been a shareholder of Athos Steel. He once owned stock in Athos Realty, but gave away the stock as gifts well before the filing of the debtor's bankruptcy petition. (N.T. 13–15).

20. He was once employed by Athos Steel but he left the company in 1965. (N.T. 12).

21. Certain shareholders of Athos Realty have filed a lawsuit in the Court of Common Pleas, Philadelphia County, Pa. against Athos Steel, which is presently pending, in which they seek to reverse a stock transfer which they claim wrongfully deprived them of control of Athos Realty. If successful, the lawsuit could deprive the debtor of an asset. However, although he has, for some reason not clear from the record, joined as a plaintiff in that action, Jay Wechsler has no financial stake in the outcome of that litigation. (N.T. 5, 27).

22. Jay Wechsler is not on good terms with his brother David Wechsler and has not spoken to him in fifteen years. (N.T. 13). Jay Wechsler's motivation in objecting to his brother's compensation is not based on any impact this bankruptcy may have on his pecuniary or legal interests. Rather, it is based on personal animus.

23. Taking into consideration David Wechsler's current duties, the debtor's place in the industry and the salaries paid to others for comparable employment, an annual salary of $70,000.00 for David Wechsler is fair and reasonable.

## CONCLUSIONS OF LAW

1. Jay Wechsler is not a party in interest and may not assert objections to the compensation paid to David Wechsler.

2. In the absence of an objection raised by a party in interest, the court has the power under 11 U.S.C. §§ 327, 328, 330, to review the compensation being paid to officers of a debtor corporation.

## DISCUSSION

The threshold question in this case is whether objector Jay Wechsler is a party in interest who may be heard in opposition to his brother's request for court approval of the annual salary the debtor proposes to pay.[2] The starting point in resolving this issue is 11 U.S.C. § 1109(b), which provides:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indentured trustee, may raise and may appear and be heard on any issue under this chapter.

The Third Circuit has made clear that the term "party in interest" is not limited by the examples set forth in section 1109(b). *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir.1985). Collier states that "[s]ection 1109(b) must be construed broadly to permit parties *affected* by a chapter 11 case to appear and be heard." 5 Collier on Bankruptcy ¶ 1109.02, at 1109-24 (15th ed. 1986) (emphasis added). Courts must determine on a case by case basis "whether the prospective party in interest has a sufficient stake in the outcome of the proceeding so as to require representation." *In re Amatex Corp.*, 755 F.2d at 1042.

■ The heart of Jay Wechsler's argument is that the concept of "party in interest" can mean something other than the term creditor. Under 11 U.S.C. § 1109(b) and *In re Amatex Corp.*, there is no question that this is true. However, the argument goes only so far. The putative party

in interest must still establish a sufficient stake in the outcome of the proceeding in order to be entitled to be heard.[3] In a decision involving the related concept of standing, in the article III constitutional sense, the Third Circuit has stated that a claimant must demonstrate exposure to some actual or threatened injury. *Frissell v. Rizzo*, 597 F.2d 840, 844 (3d Cir.1979), *cert. denied*, 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979). Moreover, "even when a litigant has demonstrated a concrete and particularized injury to himself, he is usually permitted to assert only his own legal rights as a ground for a decision in his favor, not those of third parties not before the court." *Id.* at 844. *But cf. American College of Obstetricians v. Thornburgh*, 737 F.2d 283 (3d Cir.1984), *aff'd*, — U.S. —, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986) (medical providers have standing to raise interests of their patients).

■ In this case, I conclude that Jay Wechsler has not met the minimum threshold of establishing that his interests may be affected by the Athos Steel bankruptcy. By his own admission, he has no present business relationship with the debtor. *See In re O.P.M. Leasing Services, Inc.*, 21 B.R. 983, 986 (S.D.N.Y.1981) (individual's position as former officer of debtor corporation creates no inherent right to participate in chapter 11 proceeding). It is also undisputed that the Athos Steel bankruptcy will have no direct effect on the objector's pecuniary interests. What, then, is the reason advanced by Jay Wechsler for involving himself in this matter? He testified that he, too, is in the steel business as

---

**2.** At trial Athos Steel moved to dismiss the objection on the ground that Jay Wechsler "has no standing to object." (N.T. 6). Rather than delay the hearing pending a ruling on this preliminary issue, the parties agreed to proceed that day but to alter the usual sequence in which David Wechsler would be examined. In order to prevent the record from being tainted, after completion of his direct testimony, the court conducted a brief examination prior to cross-examination by Jay Wechsler's counsel. Since I hold that Jay Wechsler is not a party in interest, I have not considered any testimony elicited during cross-examination in reaching my decision in this case.

**3.** In *In re Amatex Corp.*, the Third Circuit concluded that while individuals who have been exposed to asbestos but who have not yet manifested symptoms of asbestos-related diseases may not be "creditors" of the debtor asbestos manufacturer under the Bankruptcy Code, they did have a "practical stake" in the outcome of the debtor's reorganization proceedings sufficient to warrant their treatment as parties in interest under section 1109(b). 755 F.2d at 1041-43.

a buyer and seller of odd lots of steel through the Sugarbush Products Co. He claims that his own reputation in the steel business would suffer if the Athos Steel reorganization is unsuccessful.

■ I have doubts whether an, at best, indirect injury to reputation suffices to confer party in interest status in a bankruptcy proceeding, to an otherwise unrelated third party, especially where there are other entities which indisputably are parties in interest. *Cf. Frissell v. Rizzo,* 597 F.2d at 846–50 (party suffering indirect injury lacked standing in part because of existence of another entity with direct injury). I need not decide that precise issue, however, because Jay Wechsler failed to establish that his reputation will even be affected by the outcome of the Athos Steel bankruptcy. The only evidence of injury to reputation was his conclusory testimony.[4] In light of the troubled relationship between the Wechsler brothers, I am unwilling to give any weight to that testimony. In the absence of any corroborating evidence, there is no basis to find any reputation injury. Therefore, Jay Wechsler is not a party in interest in this proceeding.

■ The next issue is whether I have the authority to review the proposed compensation of an officer of the debtor in the absence of an objection by a party in interest. The debtor argues that the bankruptcy court should review the proposed compensation only when a party in interest has objected. The debtor suggests that review in the absence of an objection would overly entangle the court in the day-to-day operation of a chapter 11 business. I do not agree.

My starting point is *In re Zerodec Mega Corp.,* 39 B.R. 932 (Bankr.E.D.Pa.1984). In *Zerodec,* Judge Twardowski analyzed the bankruptcy court's power to pass on the salary of officers of bankruptcy debtors under the former Bankruptcy Act, the legislative history of the Bankruptcy Code and decisions under the Code. He concluded that "the employment of the debtor's officers is subject to court scrutiny ... [within] the statutory framework established by [11 U.S.C.] §§ 327 and 328...." *Zerodec,* 39 B.R. at 935. I find the *Zerodec* analysis persuasive and I will follow it. *Accord, In re Hooper, Goode Realty,* 60 B.R. 328 (Bankr.S.D.Cal.1986).

It is well established that the bankruptcy court has a duty to evaluate the reasonableness of compensation under sections 327 and 330 independent of any objection voiced by a party in interest. *In re Holthoff,* 55 B.R. 36, 39 (Bankr.E.D.Ark.1985); *In re Thomas,* 43 B.R. 510 (Bankr.D.Mass. 1984). As one court has stated, "the supervision of professional fees is essential to the operation of the bankruptcy laws, integral to the bankruptcy system and required by the Bankruptcy Code." *Matter of Daylight Transport, Inc.,* 42 B.R. 20, 21 (Bankr.E.D.N.Y.1984).

While comparatively few of the reported decisions under sections 327 and 330 reviewing professional compensation involve officers of the debtor (as opposed to attorneys or accountants, for instance), I see no reason to distinguish corporate officers from other professional persons employed in the operation of a debtor's business. Court supervision under sections 327 and 330 fosters preservation of the debtor's assets for the benefit of creditors.

"In bankruptcy cases, fees are not a matter for purely private agreement ... because every dollar paid ... correspondingly depletes the fund available to creditors."

4. He testified as follows:
Q. If Athos Steel failed in its reorganization, would you personally in any way at all be affected by that?
A. Yes, I would.
Q. How so?
A. Well, I am also in the steel business and my reputation would suffer from that.

Q. How would your reputation suffer?
A. Just the family name. People know that I'm related and I do business with a lot of people who are creditors, present creditors, in the bankruptcy, and my honesty and good faith have been preserved all this time, and it would just be damaged, that's all.
(N.T. 31).

*Cohen & Thiros, P.C.,* 44 B.R. 570, 572 (N.D.Ind.1984). Moreover, excessive expenses may jeopardize the debtor's rehabilitation. *Matter of Daylight Transportation, Inc.,* 42 B.R. at 22. These policy concerns are no less weighty in considering the compensation of corporate officers, particularly "insiders" within the meaning of 11 U.S.C. § 101(30).

In short, once it is understood that the power to review compensation is grounded in 11 U.S.C. §§ 327, 330, it becomes clear that I have the authority to review the proposed compensation of the debtor's chief executive officer in this case even though no party in interest has objected.[5]

 Finally, I must examine the rate of compensation that the debtor proposes to pay David Wechsler. It is clear, and the debtor does not dispute that Wechsler is an insider within the meaning of 11 U.S.C. § 101(30). Moreover, Wechsler's status as a member of the family which, at least in part, controls the business, requires that the transaction in which Athos Steel set his salary be subject to "greater scrutiny than 'arms length' transactions." *Zerodec,* 39 B.R. at 935. Under *Zerodec,* the debtor has the burden of establishing the value of his services in the open market. *Id.*

 To its credit, the debtor produced evidence of market value in the form of a survey of the salaries of steel company executives. The survey was compiled by the Steel Service Center Institute and covered the years 1983 and 1984. (Exhibit A–5). Upon consideration of all the evidence, however, including the survey, I find it appropriate to reduce Wechsler's authorized compensation.

At the outset, I note that the notice of proposed compensation, filed with the court and served in accordance with Local Bankr. Rule 4002.1, was inaccurate in its statement that Wechsler's proposed compensation is $87,646.00 per year. He also receives a salary in excess of $29,000.00 as president of Athos Realty which should be considered in evaluating his compensation. The relationship between the two entities is extremely close. Wechsler testified that the two companies "have operated hand-in-glove for over fifty years." (N.T. 91). The two companies used the same lawyers, accountants and ran concurrent board of director meetings. In addition, Wechsler spends comparatively little time each week on work devoted exclusively to Athos Realty relative to the salary he receives from that entity. This, too, suggests that the compensation which is technically received from Athos Realty effectively serves to compensate Wechsler in part for his Athos Steel duties. Wechsler himself agreed that consideration of both salaries together "would be fair." (N.T. 92).

The market survey submitted by the debtor includes a summary of salary ranges for steel company executives broken down by the level of the company's sales. (Exhibit A–5, page 10). For the 25 companies with gross annual sales between $16 million and $24.9 million: (a) five companies reported the chief executive officer's salary as between $65,000.00 and $84,999.00; (b) seven companies reported the salary as between $85,000.00 and $99,999.00; and (c) four companies reported the

---

**5.** The debtor places some significance on the fact that the notice of proposed compensation, which must be filed within 45 days of the filing of the bankruptcy under our local rule, states that a creditor or other party in interest who objects must file the objection in writing and serve the debtor. Upon the filing of the objection, the clerk schedules a hearing on the objection. *See* Local Bankr.Rule 4002.1(f)(4). The debtor contends that, under the local rule, compensation "is not fixed by the Court initially and is only brought to the attention of the Court if a creditor or other party in interest files an objection." While this may be true as a logistical matter, the local rule cannot be read to override the court's statutory authority under 11 U.S.C. §§ 327, 330. *Cf.* Bankr.Rule 9029 (local rules may not be inconsistent with the national rules). In this case, by agreement, the issue of Jay Wechsler's party in interest status was not bifurcated from the hearing on the merits of David Wechsler's compensation. Having heard the evidence, I will not simply ignore it. Given the procedural posture of this case, I need not decide whether a hearing must be held if an objector is denied party in interest status prior to the hearing on the merits (e.g., by way of pretrial motion).

salary as between $100,000.00 and $114,-999.00. For the 22 companies with gross annual sales between $10 million and $15.9 million: (a) two companies reported the chief executive officer's salary as between $65,000.00 and $84,999; (b) six companies reported the salary as between $85,000.00 and $99,000.00; and (c) two companies reported the salary as between $100,000.00 and $114,999.00.

As set forth above, in finding of fact no. 15, Athos Steel's annual sales, until recently, were approximately $16–17 million per year and, more recently, has dropped to a rate equivalent to $11.5 million to $12 million per year. The evidence shows that the majority of steel chief executive officer's of companies of roughly the size of Athos Steel earn salaries between $65,000.00 and $114,999.00. Within this range, about one-half of the chief executives' salaries are in the $85,000.00 to $99,000.00 range.

Consideration of this evidence, as well as the generous salary Wechsler receives from Athos Realty, suggests that the compensation proposed by the debtor would place Wechsler in the upper end of the salary ranges in the market. In light of downward trend of the debtor's business and its status as a chapter 11 debtor, I consider it fair to move the level of compensation toward the lower end of the ranges suggested by the market survey. I conclude that Wechsler's compensation, in the form of salary from Athos Steel should be set at $70,000.00 per year.[6]

An order consistent with this opinion will be entered.

---

6. The $70,000.00 is exclusive of the Athos Steel fringe benefits (use of the company car and credit cards) and the Athos Realty salary. When this other compensation is considered, Wechsler's remuneration exceeds $100,000.00 per year. In the event the debtor's sales level materially increases, it is not foreclosed from seeking an appropriate adjustment of the level of Wechsler's compensation, although it is precluded, by local rule, from seeking a salary higher than that paid as of the 90th day prepetition.