**In re TUBULAR PRODUCTS, INC., Debtor.**

**Bankruptcy No. 86–00240K.**

United States Bankruptcy Court, E.D. Pennsylvania.

July 15, 1987.

See also, Bkrtcy., 69 B.R. 582.

Myron A. Bloom, Philadelphia, Pa., for objector/David Cardis.

Charles M. Golden, Philadelphia, Pa., for debtor.

## MEMORANDUM

DAVID A. SCHOLL, Bankruptcy Judge.

Before us is a request by the Debtor to pay its Vice-President, Richard Katz, compensation for collection of accounts receivable on a contingency-fee basis of "twenty (20%) percent of collected accounts receivable after payment of all actual and necessary expenses." The Debtor's largest unsecured creditor (and also the principal of a corporation which allegedly owes money to the Debtor), David Cardis, filed an Objection based on three grounds:

1. The request was untimely, per Local Rule 4002.1(e), which requires that, "In order for the above compensation to be paid, the last date on which the notice described below may be mailed is the 45th day after the filing of the petition." The Chapter 11 petition of the Debtor was filed on January 15, 1986, and this request was not filed until April, 1987.

2. The notice was not sufficiently clear in explaining whether Mr. Katz would be paid a percentage of the gross or net amount collected.

3. The compensation sought is excessive, and the contingency basis is out of sync with *In re Meade Land & Development Co., Inc.*, 527 F.2d 280 (3d Cir.1975).

We should observe that Messrs. Cardis and Katz are former business partners who apparently had a rather stormy falling-out prior to the bankruptcy filing and taxed the resources of our Court for several months in the course of their various attacks and counter-attacks arising out of a sale of a subsidiary of the Debtor, Michael's Art Bronze, to Mr. Cardis after an in-court bidding contest between them.

We shall grant the Debtor's request in part, reducing the percentage to ten (10%) percent if litigation is unnecessary and requiring Mr. Katz to submit a report to us in compliance with *Meade Land* for approv-

al before we shall allow him any compensation.

On June 26, 1987, we issued two decisions on different matters in the same case, *In re Crouse Group, Inc.*, 75 B.R. 553 (Bankr.E.D.Pa.1987), which are both relevant to our disposition here. In the first, we granted, in part, a request of the Debtor to pay salary, expenses, and rental payments to James G. Crouse, the Chairman and Chief Executive Officer of the Debtor. Because of his failure to present any evidence of the market value of his services, we reduced the salary request for Mr. Crouse of $150,000.00 annually to $100,000.00 annually. Also, because of his personal debt of $1,500,000.00 to the corporation, we suspended the salary payments pending litigation of an Accounts Receivable action by the Creditors' Committee of the Debtor against Mr. Crouse. In so doing, we followed, as far as they were applicable, the prior decisions of other judges of this court. *E.g., In re Athos Steel & Aluminum Inc.*, 69 B.R. 515 (Bankr.E.D.Pa. 1987) (per FOX, J.); and *In re Zerodec Mega Corp.*, 39 B.R. 932 (Bankr.E.D.Pa. 1984) (per TWARDOWSKI, CH. J.)

In the second, we refused to reconsider an Order which, upon a request that we allow compensation on a contingent-fee basis, required special counsel for the Debtor to submit a *Meade Land* application before receipt of any compensation, although we did not foreclose the possibility that we ultimately would allow compensation on a contingent-fee basis after consideration of such an application.

■ We are not prepared to reject the Debtor's request on the basis that it was untimely filed, per Local Rule 4002.1(e), or on the ground that the notice was inadequate. Despite Mr. Katz's momentary confusion on the point, the notice adequately describes that compensation shall be computed on the net rather than the gross amounts collected pursuant to the arrangement. Further, we believe that the 45–day limit set forth in the Local Rule was intended only to apply to a situation where the Debtor seeks to continue compensation of an individual on the same basis as that

person was compensated pre-petition. Even in such circumstances, permission to provide compensation nunc pro tunc may be appropriate. *See In re Clinton Centrifuge, Inc.*, 72 B.R. 900 (Bankr.E.D.Pa. 1987). Here, the Debtor is seeking to compensate an officer at a rate totally unlike his pre-petition rate because of developments in collection of accounts which occurred post-petition. In this context, we do not think that the time strictures of Local Rule 4002.1(e) apply.

■ With respect to the merits of the Debtor's request, our Order modifies same in two significant respects. First, we shall allow compensation to Mr. Katz only after his filing a report indicating his collection activities and providing us with a description of the tasks performed and time expended similar to that required for counsel seeking compensation out of estate proceeds in *Meade Land,* which is consistent with Order relevant to special counsel in *Crouse Group.* Although a salary request made strictly pursuant to Local Rule 4002.-1(e) may be an exception, the general rule is that any "professional person" must comply with *Meade Land* to obtain compensation pursuant to 11 U.S.C. § 330. *See In re American International Airways, Inc.*, 69 B.R. 396, 399 (Bankr.E.D.Pa.1987). *But see In re Windsor Communications Group, Inc.*, 68 B.R. 1007 (D.C.E.D.Pa. 1986) (debt collectors may not be "professional persons"). In any event, we consider it prudent to examine the fruits of the labors of Mr. Katz, like any party whose compensation we are to regulate, before we award him any payments from the Debtor's estate.

■ As in the Opinion relating to the compensation of James A. Crouse in *Crouse Group,* we are compelled to award what appears "subjectively reasonable" compensation to Mr. Katz in the absence of evidence regarding the market value of his services. We are, however, applying the contingency fee sought *as a cap* to the compensation of Mr. Katz. Furthermore, we believe that a ten (10%) percent contingency fee cap is quite adequate for collections which result without resort to litiga-

tion, and thus we will apply the twenty (20%) percent contingency only to those collections in which litigation is necessary. This percentage (and only fifteen (15%) percent for collections effected in litigation) was recently all that was requested, and ultimately approved by us with certain conditions, including compliance with *Meade Land,* by a Trustee seeking to engage his law firm as his counsel to collect accounts receivable in *In re Contemporary Marketing, Inc.,* Bankr. No. 86–05133S (Bankr.E. D.Pa., Order filed April 24, 1987). These figures seemed quite sufficient to us at the time we entered that Order.

An Order consistent with the foregoing will be entered by us.