**In re CLOVERLEAF PROPERTIES, Debtor.**

**Martin GOLDBERG, Trustee, Plaintiff,**

v.

**John A. ROSE, Howard F. McCluan, and Cloverleaf Properties, a California partnership, Defendants.**

**John A. ROSE, Appellant,**

v.

**Martin GOLDBERG, Trustee, Appellee.**

BAP No. SC–86–1894.
Bankruptcy No. 83–00158–M7.
Adv. No. C84–0004–M7.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted March 18, 1987.
Decided Sept. 16, 1987.

William A. Smelko, Wied & Smelko, San Diego, Cal., for appellant.

Robert J. Parks, Finley, Kumbel, Wagner, Heine, Underberg, Manley & Casey, San Diego, Cal., for appellee.

Before JONES, ASHLAND and MOOREMAN, Bankruptcy Judges.

## OPINION

JONES, Bankruptcy Judge:

John Rose, a partner in the debtor partnership, appeals an order of the bankruptcy court requiring him to turnover to the trustee $11,468.29 in unauthorized postpetition payments. We reverse.

## FACTS

Cloverleaf Properties is a California partnership composed of three general partners: Howard McCluan, John Rose and Nolan Wright. On January 13, 1983, McCluan, acting alone, filed a voluntary Chapter 11 petition in the name of the partnership. An order for relief was entered the same day. McCluan, Rose and Wright were all listed on the petition as partners, but the petition was signed only by McCluan and contained an incorrect mailing address for Rose. McCluan failed to file schedules and on May 11, 1983, the case was converted to Chapter 7 and a trustee, Martin Goldberg, was appointed.

For some time after the petition was filed, McCluan did not mention the filing to his partners and no notice was given to the other two partners. On January 24, February 16, and March 2, 1983, a creditor of the partnership, Central Federal Savings and Loan, sent correspondence regarding the bankruptcy to all three general partners. A letter from McCluan to Central Federal dated March 2, 1983 stated "Discussed your letter of March 2nd with the Partners, they agree to all points except Numbers (1–2–3)." The letters to Rose contained the incorrect address listed in the petition and Rose claims he received none of the Central Federal correspondence nor any other notice of the pending bankruptcy. Rose claims he was unaware of the bankruptcy until several months after the case was filed, when he attended a meeting of creditors held pursuant to Bankruptcy Code section 341, 11 U.S.C. section 341, ("341 meeting") on June 15, 1983.

Meanwhile, on April 8, 1983, Rose received $8,267.89 from the debtor partnership and on May 27, 1983 he received

$3,200.40. Neither payment was authorized by the bankruptcy court.

At the 341 meeting, Rose objected that a petition had been filed without his knowledge or consent. There was conflicting testimony about what was said at the meeting. The trustee claims he told Rose that if he (Rose) thought the case had been improperly filed, he should retain counsel and seek to have the case dismissed. Rose claims the trustee told him that he (the trustee) was not sure whether Rose had any standing in the case, that he (the trustee) would investigate the issue, and that he would get back to Rose. According to Rose, the trustee never contacted him again. The trial court did not discuss this testimony in its memorandum decision. After the 341 meeting, however, Rose did not move to dismiss the case and still has not done so.

On January 4, 1984, Goldberg filed a complaint for turnover of property against Rose and McCluan, alleging that they had received postpetition payments from the partnership. Rose admitted having received the two postpetition payments of $8,267.89 and $3,200.40, but asserted that the bankruptcy court lacked jurisdiction over the case as the petition had been filed without the consent of all general partners, as required by Bankruptcy Rule 1004(a).

After trial, the bankruptcy court entered a memorandum decision finding that Rose learned of the bankruptcy when he attended the 341 meeting, that he never attempted to dismiss the case, and that he received the benefits of the bankruptcy court's jurisdiction. The court concluded that, under these facts, Rose could not object at such a late date to the jurisdiction of the bankruptcy court even though the petition was originally filed by less than all of the general partners and notice was not given under Bankruptcy Rule 1010. The court then held for the Trustee and ordered Rose to turnover to the trustee the two postpetition payments. Rose appeals the trial court's ruling regarding jurisdiction.

## DISCUSSION

The question in the case at bar is whether the bankruptcy court had jurisdiction to issue the turnover order. This is a novel question that has not been previously addressed by any court in the ninth circuit. It is, in addition, a question of law which we review de novo. *In re American Mariner Ind., Inc.*, 734 F.2d 426, 429 (9th Cir. 1984).

Although a general partner may ordinarily bind a partnership without the consent of the other general partners, in bankruptcy this rule is reversed. *In re Seychelles*, 30 B.R. 72, 74 (Bankr.N.D.Tex. 1982). A voluntary petition in bankruptcy requires the consent of all general partners. *See* Bankruptcy Rule 1004(a); *Seychelles*, 30 B.R. at 74. A petition filed by less than all the general partners of a partnership is considered an involuntary petition, subject to certain procedural safeguards. *Seychelles*, 30 B.R. at 74; *In re Baker*, 54 B.R. 743, 746 (Bankr.E.D.Tenn. 1985); *see* 11 U.S.C. section 303(b)(3)(A). This system prevents fewer than all general partners of a partnership from placing the partnership in a bankruptcy without providing the non-consenting general partners with notice and an opportunity to be heard. *Seychelles*, 30 B.R. at 74; *In re Alpine Lumber and Nursery*, 13 B.R. 977, 979 (Bankr.S.D.Cal.1981). The notice required is a summons, served either personally or by mail, informing the nonfiling partner that a petition has been filed and that if he opposes, an answer must be filed within 20 days after service of the summons. *See* Bankruptcy Rules 1010, 1011 and 7004(a) and (b); Official Form 13; Fed. R.Civ.P. 4(d)(1).

*In re R.S. Pinellas Motel Partnership*, 5 B.R. 269 (Bankr.M.D.Fla.1980), is the only case with facts similar to those in the case at bar. In *Pinellas*, the partnership consisted of two individuals. One partner, without the other's knowledge, filed a Chapter 11 petition. The nonconsenting partner ("Kane") sought and obtained a position on the official creditor's committee. Kane, through counsel, actively participated at the 341 meeting. Kane later filed a document entitled "answer" although it was not treated as an answer to

an adversary proceeding and did not put in issue whether the partnership was paying its debts as they came due. Kane's attorney continued to play an active role in the reorganization:

> [H]e did actively participate in the proposed sale to Mr. Morrell; and, he did consider the Ramada franchise to be a valuable asset and took the position that only through the institution of these proceedings was the franchise saved. Even after the Morrell sale aborted, he actively sought and explored the possibilities of finding an acceptable buyer and even now would be willing to consent to the sale of the facility if a buyer could be found.

*Pinellas*, 5 B.R. at 273. The court concluded that in light of these facts, Kane was estopped from asserting that the case had been improperly commenced. *Id.* at 273–74. The court also concluded that, even absent formal notice, Kane, as a nonassenting partner, had "a duty to controvert the petition and in the absence of a controverting answer, the Court is authorized to enter an Order for Relief...." *Id.* at 274.

Relying on *Pinellas*, the trial court in the case at bar stated:

> Where the non-consenting general partner is fully aware of the pendency of a bankruptcy proceeding and yet fails to take any action to seek dismissal of the petition, that partner is estopped from later objecting to the jurisdiction of the bankruptcy court, despite the fact that the petition was filed by less than all the general partners and notice was not given as required by Rule 1010.

The trial court was concerned that any other rule would allow partnerships to file an improper petition, take advantage of bankruptcy court protection, but then challenge the propriety of the case when bankruptcy was no longer advantageous.[1]

The court's concern is a valid one. It is also important, however, to protect the procedural due process rights of nonfiling partners. The Bankruptcy Code and Rules provide that the filing of a petition by less than all the members of a partnership is treated as commencing an adversary proceeding. An array of procedural safeguards are thereby invoked. *See* discussion *supra*. These safeguards must not be lightly set aside.

In *Pinellas*, the court concluded that because of Kane's substantial involvement in the proceedings, he could not later challenge the propriety of the filing. Although *Pinellas* is analogous to the case at bar, there are significant distinctions between the cases. First, Kane, the non-consenting partner in *Pinellas*, was substantially more involved in the bankruptcy proceedings than was Rose in the case here. Second, Kane was represented by counsel whereas Rose was not. Third, the record in *Pinellas* clearly indicated that the partnership benefited from the bankruptcy court's jurisdiction. The record in the instant case evidences no such benefit. Finally, in *Pinellas*, there was no justification for Kane's failure to seek dismissal. Rose, on the other hand, asserts that he did not seek assistance of counsel or dismissal because the trustee said he would check into the propriety of the filing. Therefore, although we feel that the rule announced in *Pinellas* is sound, we do not believe that the facts of the instant case justify invoking the *Pinellas* rule. The trial court was legitimately concerned with possible abuse of the bankruptcy process by partnerships; but such abuses may be prevented by careful analysis of the facts of each case. Where there appears to be collusion among the partners, where the objecting partners were aware of the proceedings early on, or where the objecting partners were actively involved in the proceedings, the *Pinellas* rule is properly invoked. However where, as here, there is no evidence of collusion, or that the objecting partner knew of the

---

1. In both *Pinellas* and the instant case, the trial court used the term "estop." The use of this term is, perhaps, unfortunate. For instance, in the case at bar, the Appellant argues that the elements of a true estoppel are not present. It is clear, however, that in neither *Pinellas* nor the instant case did the court use the term estop in the technical sense. Rather, both courts clearly meant that under the facts at hand, it would be unfair to let the non-filing partner object to the court's jurisdiction.

bankruptcy early on, or that he was actively involved in the case, the *Pinellas* rule should not be invoked.

In light of the above, we conclude that the Cloverleaf bankruptcy petition was improperly filed and that the bankruptcy court lacked jurisdiction to enter its turnover order. Accordingly, the order appealed from is VACATED and the case is REMANDED to the bankruptcy court for entry of an order dismissing the case.