**In re MEMPHIS–FRIDAY'S
ASSOCIATES a Tennessee
partnership, Debtor.**

**Bankruptcy No. 88–23082–B.**

United States Bankruptcy Court,
W.D. Tennessee, W.D.

June 7, 1988.

William M. Gotten, Memphis, Tenn., for debtor and Maruki Tennessee "F," Inc.

Ellen Vergos, Waring Cox, Memphis, Tenn., for Overton Square Partners.

Toni Campbell Parker, Memphis, Tenn., for Connecticut Mut. Life Ins. Co.

John D. Horne, Memphis, Tenn., for Memphis–Fridays, Inc.

## MEMORANDUM OPINION ON MOTION TO DISMISS VOLUNTARY PETITION AND TO DISQUALIFY DEBTOR'S COUNSEL

WILLIAM H. BROWN, Bankruptcy Judge.

The issues presented in this contested matter are whether a voluntary petition filed under Chapter 11 of the Bankruptcy Code must be dismissed, on motion of a party in interest, due to the intended voluntary filing being without the consent of both general partners; whether the order for relief automatically granted upon the filing of the voluntary petition must be vacated; whether counsel for the purported debtor must be disqualified, and whether an improperly filed "voluntary" petition may be amended to become an involuntary petition. The motion giving rise to this contested matter was filed by a party in interest, rather than by a general partner, and the issue of standing of that party in interest to so bring a motion to dismiss has been raised.

This is a core proceeding under 28 U.S.C. Section 157(b)(2)(A).

### CASE HISTORY

A Chapter 11 voluntary petition was filed on April 30, 1988, with the Debtor being styled "Memphis–Friday's Associates, a Tennessee limited partnership," and the petition was signed by Maruki Tennessee "F," Inc. (hereinafter "Maruki"), managing general partner of the limited partnership, the named Debtor. The primary assets of the Debtor are a commercial leasehold interest and franchise right to operate a TGI Friday's restaurant in the Overton Square area of Memphis, Shelby County, Tennessee. The voluntary petition was also signed by William M. Gotten, Esquire, attorney for the named Debtor. On May 18, 1988, Overton Square Partners (hereinafter "OSP"), as the landlord of the named Debtor and as a creditor, moved the court to dismiss the voluntary petition, alleging that the Debtor was in fact a Tennessee general partnership rather than a limited partnership, and the general partnership agreement of Memphis–Friday's Associates was

filed as an exhibit to the motion. The motion further sought to disqualify the named Debtor's counsel, Mr. Gotten, from his representation of the Debtor and alleged that all bankruptcy actions taken on behalf of the partnership were improper, since the partnership had not in fact employed Mr. Gotten. Attached as a further exhibit to the motion to dismiss was a sworn declaration of Gerard de Cerjat, President of Kenmare, Inc., a Delaware corporation, which is the sole general partner of Kenmare Associates, a Tennessee limited partnership. Kenmare Associates is also a general partner of the named Debtor, Memphis–Friday's Associates, with the other general partner being Maruki Tennessee "F," Inc.

This motion to dismiss was filed the day before the court heard a motion for relief from the stay which had been filed previously by OSP. OSP in its motion for relief from the stay alleged that the named Debtor was in default of lease obligations, both monetary and non-monetary, and that the lease had terminated by its contractual terms on April 30, 1988, the date of filing of the bankruptcy petition.

At the May 19, 1988, hearing on the motion for relief from the stay, the court, *sua sponte*, raised the question of whether the Debtor, Memphis–Friday's Associates, was in fact a proper debtor due to the allegation that the Debtor was a general partnership rather than a limited partnership and due to the allegation that one of the general partners had not consented to the voluntary filing.[1] The court then reserved its ruling on the motion for relief from the stay until the motion to dismiss could be heard.

A hearing on the motion to dismiss was held on May 26, 1988, by which time the named Debtor had responded to the motion to dismiss, admitting that it was in fact a Tennessee general partnership rather than a limited partnership. However, Mr. Gotten, as Debtor's counsel, asserts that he was unaware that the partnership was general rather than limited until the filing of the motion to dismiss. The case record,

including statements at the May 19 hearing, reflects that Mr. Gotten became involved in his representation of his client shortly before the filing of the Chapter 11 petition and that Memphis–Friday's Associates had earlier used other attorneys. The petition is in fact signed by Maruki Tennessee "F," Inc., as general partner for a Tennessee limited partnership; however, Maruki Tennessee "F," Inc. no longer asserts that the partnership is a limited one. The partnership agreement, which was admitted into evidence at the May 19, 1988 hearing, provides that Uokuni Tennessee "F," Inc., (now named Maruki Tennessee "F," Inc.) is the managing general partner of Memphis–Friday's Associates, and that Kenmare Associates is the "investor" partner in Memphis–Friday's Associates. The partnership agreement is dated November 1, 1985, and provides that the partnership is governed by Tennessee law.

## FINDINGS OF FACT

The court finds, from the undisputed evidence, as well as from statements of counsel, that Memphis–Friday's Associates is a general partnership, governed by Tennessee general partnership law, rather than a limited partnership.

The general partners of Memphis–Friday's Associates are Maruki Tennessee "F," Inc., a Tennessee corporation, and Kenmare Associates, a Tennessee limited partnership.

Kenmare Associates has not consented to the filing of the original "voluntary" petition, as evidenced by the affidavit of Mr. de Cerjat, a principal of Kenmare Associates.

The partnership agreement of Memphis–Friday's Associates provides that the managing general partner may conduct certain business functions, but there is no specific language in the partnership agreement providing that the managing general partner may file, unilaterally, a bankruptcy petition.

Mr. William M. Gotten, counsel for the named Debtor in the original petition, has stated that he in fact was employed by and

---

1. See 11 U.S.C. Section 105(a).

is being compensated for his professional services by Maruki USA Company, Inc., a related entity to Maruki Tennessee "F," Inc., rather than from funds of the partnership. Further, the partnership agreement does not authorize employment of legal counsel on behalf of the partnership by the managing general partner, without the consent of Kenmare Associates. Mr. William M. Gotten is in fact not the legal counsel for the partnership of Memphis–Friday's Associates, but rather represents Maruki Tennessee "F," Inc., one of the general partners.

## DISCUSSION AND CONCLUSIONS

The issues involved in this contested matter go to the heart of whether the original filing of the bankruptcy petition is valid, and if not, whether the order for relief must be vacated. Since the parties have admitted and the court has found that the partnership of Memphis–Friday's Associates is in fact a general rather than a limited partnership, the Bankruptcy Code and Rules require that the case be dismissed or that the court allow an amendment to the original filing. Commencement of an voluntary case under any chapter of Title 11 "constitutes an order for relief under such chapter." 11 U.S.C. Section 301. Therefore, as to voluntary cases, the filing date and order for relief are simultaneous. When the petition was filed in this case on April 30, 1988, the clerk of the court, being advised that it was a voluntary petition on behalf of a partnership, indicated, in the routine followed in voluntary cases, that relief was ordered under Section 301.

However, it is now clear that the original filing could not be a voluntary petition. Bankruptcy Rule 1004 provides guidance for filing of partnership petitions and states that a voluntary petition may be filed on behalf of the partnership, "if all general partners consent to the petition." Bankruptcy Rule 1004(a). The Rule does not require that all general partners sign the petition, but that they must consent to its filing. In the event that the general partners do not unanimously consent, an involuntary petition may be filed by one or more of the general partners, pursuant to Code Section 303(b)(3) and Bankruptcy Rule 1004(b).[2] See, *Norton Bankruptcy Law & Practice*, Section 9.07. Upon the filing of an involuntary petition against a general partnership, a general partner that did not join in or consent to the petition may answer the petition. 11 U.S.C. Section 303(d). After service of summons and the petition on the non-consenting general partner(s) the court, if default has not occurred by the failure to answer, after trial, "shall order relief against the debtor" only if the statutory basis for so ordering is found pursuant to 11 U.S.C. Section 303(h)(1) or (2).[3]

---

2. 11 U.S.C. Section 303(b)(3) provides for involuntary filing, if such person [involuntary debtor] is a partnership—

(A) by fewer than all of the general partners in such partnership; or

(B) if relief has been ordered under this title with respect to all general partners in such partnership, by a general partnership in such partnership, the trustee of such a general partner, or a holder of a claim against such partnership;

and Bankruptcy Rule 1004(b) provides:

After filing of an involuntary ·petition under Section 303(b)(3) of the Code, (1) the petitioning partners or other petitioners shall cause forthwith a copy of the petition to be sent to or served on each general partner who is not a petitioner; and (2) the clerk shall issue forthwith a summons for service on each general partner who is not a petitioner. Rule 1010 applies to the form and service of the summons.

3. Section 303(h).

If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—

(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute; or

(2) within 120 days before the date of the filing of the petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

In a recent Ninth Circuit opinion, the Bankruptcy Appellate Panel has addressed the involuntary petition procedure, in a case which factually has some similarity to the present one. *In re Cloverleaf Properties*, 78 B.R. 242 (9th Cir. BAP 1987) (hereinafter *"Cloverleaf"*). In *Cloverleaf*, a voluntary Chapter 11 petition was filed in the name of the partnership and simultaneously the order for relief was entered. The petition was signed by only one of the three general partners. Because of failure to complete schedules, the case was converted to a Chapter 7 and a trustee was appointed. The two remaining general partners apparently received no notice of the bankruptcy filing, and at least one of the partners asserted that he did not know of the bankruptcy filing for several months after the filing. Subsequent to the conversion to Chapter 7, the trustee filed a complaint for turnover against two of the partners, including a partner who had not signed the bankruptcy petition. That non-signing partner asserted that the bankruptcy court "lacked jurisdiction over the case as the petition had been filed without the consent of all general partners as required by Bankruptcy Rule 1004(a)." 78 B.R. at 244.

Therefore, the Bankruptcy Appellate Panel facing for the first time the issue in the Ninth Circuit, addressed the question of jurisdiction in such fact situations and the Panel observed that while under non-bankruptcy law a general partner may bind the partnership without consent of all partners, "in bankruptcy this rule is reversed." 78 B.R. at 244, *citing In re Seychelles*, 30 B.R. 72, 74 (Bkrtcy.N.D.Tex.1982). Under the Code and Rules, this conclusion is correct.

Further, the *Cloverleaf* Panel pointed out that a petition filed by fewer than all of the general partners, or more correctly without the consent of all general partners, was in effect always an involuntary petition. 78 B.R. 244, citing *Seychelles*, 30 B.R. at 74, and *In re Baker*, 54 B.R. 743,

746 (Bkrtcy.E.D.Tenn.1985). This court agrees with that result.

There are, as *Cloverleaf* correctly asserts, procedural protections that accompany an involuntary filing, since the involuntary filing triggers an adversary proceeding. The protections of Part VII of the Bankruptcy Rules come into play, to protect the partnership and the non-consenting general partners, giving them notice and an opportunity to answer and to try the disputed issues. 78 B.R. at 244. *See*, Bankruptcy Rules 1010, 1011 and 7004; see also *Norton Bankruptcy Law and Practice*, Section 9.10.

After concluding that the *Cloverleaf* bankruptcy petition was improperly filed, since it was filed as a voluntary petition without consent of all general partners, the Ninth Circuit Bankruptcy Appellate Panel concluded that the bankruptcy court "lacked jurisdiction to enter its turnover order," and the Panel remanded the case to the bankruptcy court for entry of an order "dismissing the case." 78 B.R. at 246. There was no discussion in *Cloverleaf* about amendment as an alternative to dismissal.

■ This court is concerned about the procedural due process safeguards of Section 303 of the Bankruptcy Code, and concludes that it should exercise caution in reference entry of orders of relief from the stay or other substantive orders affecting property of the Debtor, until it has been determined by the court pursuant to Section 303 that the named Debtor is in fact a debtor involuntarily. That is, this court will not determine substantive issues involving property of Memphis–Friday's Associates until Memphis–Friday's Associates is in fact a Debtor before this court.[4] This judicial determination that there is an involuntary debtor would involve either a default by Kenmare Associates, the non-consenting general partner, in failing to answer an involuntary petition, or a proper

---

**4.** The court is, however, aware that commencement of a case under Section 303 "creates an estate." Section 541(a). There is not yet a compelling reason to affect Memphis–Friday As-

sociates' and Kenmare Associates' interests in the estate property without first according Kenmare the procedural opportunities of Section 303.

determination after trial under Section 303(h).

However, this court feels that the present facts may be distinguished from those of *Cloverleaf*. In *Cloverleaf*, the case had been converted to a Chapter 7, after an improper voluntary Chapter 11 filing. A trustee had been appointed and had taken substantive action adverse to the interest of the general partners. The Ninth Circuit Bankruptcy Appellate Panel correctly concluded that neither the trustee nor the bankruptcy court could take such adverse actions due to the improper original filing. In the present case, this court has not yet taken any substantive action in the case with regard to the property. No findings have been made, except for the present memorandum opinion and its resulting order. Proof has been taken on the motion for relief from the stay filed by OSP; however, the court has reserved its ruling upon that motion. As a result of this memorandum opinion, the court will not make any substantive rulings or determinations concerning relief from the stay until the non-consenting general partner, Kenmare Associates, is properly before this court. Therefore, dismissal of the case is not required.

Memphis–Friday's Associates, or more correctly, Mr. Gotten on behalf of Maruki Tennessee "F," Inc., seeks to rely upon *In the Matter of R.S. Pinellas Motel Partnership*, 5 B.R. 269 (Bkrtcy.M.D.Fla.1980), as support for this court treating the voluntary petition as a proper one. In *Pinellas*, the general partnership, as in Memphis–Friday's Associates, consisted of two partners, and one partner, without the other's knowledge or consent, filed a voluntary Chapter 11. The non-filing partner was named to a creditor's committee in the bankruptcy proceedings, and he actively engaged in the bankruptcy proceedings. A sale, with the participation of the non-filing partner, occurred in the bankruptcy case, and the *Pinellas* Bankruptcy Court concluded that the non-filing partner was estopped from asserting an improper original case commencement. 5 B.R. at 273–74.

This court agrees with the *Pinellas* Court in the peculiar facts of the *Pinellas* case. The non-filing general partner in *Pinellas*, even without formal summons and service of the bankruptcy petition, had actual knowledge of the bankruptcy filing, and more importantly, actively involved himself as a participant in the bankruptcy case and proceedings. Thus, the *Pinellas* Court concluded that the non-filing partner was estopped from asserting that the case had been improperly filed. 5 B.R. at 273–74. Further, the *Pinellas* court concluded that the non-filing partner had "a duty to controvert the petition and in the absence of a controverting answer, the court is authorized to enter an order for relief." 5 B.R. at 274. As the *Cloverleaf* court points out, estoppel in its technical sense is not really at issue. Rather, it would be unfair to allow the non-filing partner to object to the bankruptcy court's jurisdiction, as a strategic maneuver, after that same non-consenting partner had participated in and perhaps taken advantage of that same bankruptcy court's jurisdiction. *Cloverleaf*, 78 B.R. at 245, n. 1.

These facts are clearly different from the present case. Here, Memphis–Friday's Associates purportedly filed, through its managing general partner, a voluntary Chapter 11 petition on April 30, 1988. Kenmare Associates, the non-filing general partner had no notice of the filing and was not consulted concerning the filing, according to the affidavit of Mr. Gerard de Cerjat. Clearly, at least at this point in time, Kenmare Associates has not consented to the petition. Further, Kenmare Associates has not actively participated in the bankruptcy proceedings. This is a case in its infancy, and the court has reserved ruling upon any substantive issues, until Kenmare Associates is properly before the court, after summons and service.

This court therefore agrees with *Pinellas*, in the *Pinellas* fact situation, but also finds the *Cloverleaf* rationale to be controlling in the present fact situation, but only on the issue of due process protections. As in the *Cloverleaf* case, this court will protect the "procedural due process rights of non-filing partners." 78 B.R. at 245. The

procedural due process concerns affect not only Kenmare Associates, but the partnership itself, its partnership assets and its creditors. This court will not knowingly disregard those due process protections and the court has a duty to prevent an improperly filed voluntary petition from proceeding in a case administration. 11 U.S.C. Section 105(a).

However, this court does not follow *Cloverleaf* to its ultimate result. In *Cloverleaf*, the Bankruptcy Appellate Panel remanded the case to the bankruptcy court for dismissal of the original petition. That was perhaps a proper result in the *Cloverleaf* case, because the bankruptcy court was found to have taken invalid substantive actions. Here, no substantive actions have yet been taken. This court concludes that the original filing was in fact a filing by only one of the general partners against the partnership. Therefore, it was *de facto* an involuntary petition filed on April 30, 1988.

### ORDER FOR RELIEF AND AMENDMENT

The unique issue of this case is how to treat, procedurally, an improper voluntary filing in the present fact situation. The court will put the parties in interest where they would have been on April 30, 1988, had the petition been properly filed as an involuntary one. Since the original filing was *de facto* involuntary, the court will permit Mr. Gotten, on behalf of Maruki Tennessee "F," Inc., to amend the original petition by substitution of an involuntary cover sheet. *See*, Bankruptcy Official Form 12. The filing date of April 30, 1988, will remain the same for the involuntary petition. Summons must issue to the other general partner, Kenmare Associates. *See*, Bankruptcy Official Form 13. Because Mr.

Gotten is being compensated by Maruki U.S.A., Inc., a related entity to Maruki Tennessee "F," Inc., he may proceed to represent the petitioning general partner in the involuntary proceeding. However, the order of May 5, 1988, authorizing his employment by Memphis–Friday's Associates will be vacated, since Mr. Gotten is not yet authorized to represent Memphis–Friday's Associates. No partnership funds have been utilized, according to statement of counsel, to employ or compensate Mr. Gotten.

■ Maruki Tennessee "F," Inc. asserts that the court should not disturb the order for relief which was entered on April 30, 1988, and as a part of that position, asserts that OSP lacks standing to raise any defect in the petition. Allegations of a common purpose between OSP and Kenmare Associates to defeat the interests of Maruki Tennessee "F," Inc. and Memphis–Friday's Associates in a valuable commercial lease are implied by Maruki Tennessee "F," Inc. There has been no proof yet to factually support the allegations. The court finds that OSP, which is admittedly a creditor of Memphis–Friday's Associates, has standing as a party in interest to contest the validity of the filing. *See* 11 U.S.C. Section 1109(b).[5] "Party in interest" is not a term strictly defined by the Code or limited by the examples in Section 1109(b). *In re Athos Steel and Aluminum, Inc.*, 69 B.R. 515, 15 B.C.D. 455, 457 (Bkrtcy.E.D.Pa. 1987). The court must determine in each case "whether the prospective party in interest has a sufficient stake in the outcome of the proceedings as to require representation." *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3rd Cir.1985). OSP has a vital stake in the outcome of this contested matter and is a party in interest with standing to raise the filing defect.[6]

---

**5.** Section 1109(b) provides:
A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

**6.** OSP's motion to dismiss was filed as to the "voluntary" petition and addresses the subject

matter jurisdiction of this court. Therefore, OSP's standing in this instance is a different question from standing of a creditor to challenge an involuntary filing. *See, e.g., In re Royal Gate Associates, Ltd.*, 81 B.R. 165, 167 (Bkrtcy.M.D.Ga.1988) (holding that under Section 303(d) only a debtor or partner in a partnership debtor has standing to answer an involuntary petition).

Further, Maruki Tennessee "F," Inc. asked the court not to vacate the order for relief until all underlying facts have been developed in an adversary proceeding. At this point, the court may not presume any facts except the ones in evidence and properly before the court. The court cannot presume any motives on behalf of Kenmare Associates nor other entities. Rather, the court is required to enforce clear Bankruptcy Code provisions concerning involuntary filings. Section 303(h) of the Code specifically provides that the order for relief shall not be entered until after either default in an answer or after trial and a judicial finding that the involuntary debtor is in fact a debtor. As a bankruptcy court in Texas has recently pointed out, under Section 303, a general partner files an involuntary petition not for but against the partnership. By its very filing of an involuntary petition, the filing general partner initiates an adversary proceeding and becomes an adversary party. *In re BC & K Cattle Co.,* 84 B.R. 69, 70 (Bkrtcy.N.D.Tex.1988), *citing* Bankruptcy Rule 1011. The *BC & K Cattle Co.* Court was concerned about the due process protections and possible due process violations concerning non-consenting partners, as is this court. It is certainly not uncommon for one or more general partners to disagree, and therefore one of the purposes served by Section 303(b)(3) is to permit a general partner to file an involuntary petition against the partnership when the partners are unable to agree on filing. *See, e.g., In re Wallen,* 43 B.R. 408 (Bkrtcy.Idaho 1984). An involuntary petition is an "attempt to compel the administration of the debtor's estate through a bankruptcy case." *Norton Bankruptcy Law & Practice,* Section 9.03.

■ This court can find no Code provision or authority for allowing the order for relief to stand. Rather, the Code is clear that the order for relief is not effective in this case until a judicial determination is properly made pursuant to Section 303(h). *See, generally,* Bkr.L.Ed., *Code, Commentary and Analysis,* Section 12:18. Therefore, the court has no choice, since it is allowing an amendment of the original filing, but to vacate the April 30, 1988, order

for relief. The vacating of this order, accompanied by the amendment of the original petition, simply puts the parties in the position they would have been in on April 30, 1988, had the petition been properly and originally filed as an involuntary one.

Allowing an amendment of the original petition to an involuntary one is not violative of the concept of the Code in the facts of this case even though the Bankruptcy Rules only speak of amendments to voluntary petitions. *See,* Bankruptcy Rules 1009(a). The concept of amendments is not alien to involuntary petitions, however, since non-filing creditors may later join in the petition. 11 U.S.C. Section 303(c). "For the purpose of judicial economy, the court will treat this case as if it were initially filed as an involuntary chapter 11 proceeding." *In re Fierman,* 14 B.R. 753, 755 (Bkrtcy.E.D.Pa.1981). In *Fierman,* the voluntary petition was filed by one general partner who stated that he had authority to file on behalf of the partnership. The non-filing general partner answered the "voluntary" petition, denying any authority to file, but admitting that the partnership was unable to pay its debts as they matured. The filing partner then moved for judgment on the pleadings, seeking involuntary relief under Section 303(h). The *Fierman* Court reached a conclusion and result consistent with this court's instant decision.

No purpose will be served in the present case by a dismissal now. "An involuntary case culminates either in an order for relief or in dismissal. If an order for relief is granted, the case proceeds in the same manner as would a voluntary case." *Norton Bankruptcy Law & Practice,* Section 9.13. However, even though the order for relief is vacated and the petition will be treated as an involuntary one, the automatic stay is in effect.

Of course, the filing of an involuntary petition triggers the automatic stay. 11 U.S.C. Section 362(a). *See also, In re Royal Gate Associates, Ltd., supra,* 81 B.R. at 167. Therefore, motions for relief from the stay may still need to be heard. This court will not conclude such hearings that have

already been held, nor will the court conduct further hearings, pending proper notice to the non-consenting general partner, Kenmare Associates.

Maruki Tennessee "F," Inc. asserts that Maruki was acting in the best interest of both the partnership and of Kenmare Associates by its filing. Again, this court may not assume that to be true. Kenmare Associates and Maruki may have divergent views on what is in the best interest of the partnership and of each other. Allowing for the assertion of those different views is one of the protections accorded by Part VII of the Bankruptcy Rules which are brought into play with the involuntary filing.

This court also notes that the Bankruptcy Court for the Southern District of Ohio found a fact situation in which an involuntary filing was proper, without the actual consent of all general partners. *In re Channel 64 Joint Venture*, 61 B.R. 255 (Bkrtcy.S.D.Ohio 1986). The *Channel 64* case involved a joint venture agreement wherein a management committee was specifically authorized by the partners to file a bankruptcy petition. This specific language was found to be controlling by the *Channel 64* Court and to constitute consent by the general partners to the bankruptcy filing initiated by the management committee. Such a clear partnership agreement authorization is not present in the Memphis–Friday's Associates' partnership agreement. The court will not speculate on what may occur if Kenmare Associates decides to consent to the original filing. Whether such consent would reinstate the order for relief is not before the court. The date of an order for relief in the present case may be important, since pleadings filed in the case assert that OSP has terminated, contractually, its commercial lease with Memphis Friday's Associates on April 30, 1988. *See*, 11 U.S.C. Section 365(c)(3). However, the court has not taken proof on whether the Debtor may assume the commercial lease or other executory contracts, and will not conduct those hearings until Kenmare Associates and Memphis–Friday's Associates are properly before the court.

For purposes of the court's decision to allow Maruki to amend its original filing, there has been no proof that Maruki filed in bad faith. The court is making no finding that Maruki did or did not know the true nature of the partnership. The declaration signed on April 30, 1988 by Maruki Tennessee "F," Inc. asserts that Maruki Tennessee "F," Inc. is the managing general partner of Memphis–Friday's Associates, a Tennessee limited partnership. There has been no testimony as to what Maruki knew or did not know concerning that declaration. The court by its ruling in this memorandum is merely trying to put the parties in interest where they would have been had the filing been properly made on April 30, 1988, as an involuntary filing, and the court therefore is not making a finding at this point on the good faith or lack thereof of Maruki Tennessee "F," Inc. in its original filing. No proof of Maruki's good faith or lack thereof has been presented by OSP or any other party in interest. "The question of whether a petition is fraudulent or is the product of some other bad faith on the part of the petitioners is a matter of defense which should be determined at the trial on the involuntary petition." *In re Rush*, 10 B.R. 526, 527, 7 B.C.D. 605, 606 (Bkrtcy.N.D.Ala.1981). This court will not impute a bad faith to the filing without clear proof on that issue. *See generally* Haines, "Good Faith: An Idea Whose Time Has Come and Gone," *Norton Bankruptcy Law Adviser* (April, 1988); *cf., In re Dolton Lodge Trust, No. 35188*, 22 B.R. 918, 7 C.B.C.2d 303, 312 (Bkrtcy.N.D.Ill.1982) (in which the court found evidence of bad faith in an involuntary filing). In the present case, Maruki Tennessee "F," Inc. has already obtained the issuance of summons and has expressed a willingness to amend its original filing, and has initiated service upon Kenmare Associates. In fact Maruki now agrees that Memphis–Friday's Associates is a Tennessee general partnership. In *Dolton Lodge*, that Bankruptcy Court would not construe the filing to be an involuntary one, since "summons was not served directed to all non-consenting partners." The *Dolton Lodge* Court found

**830**

"these deficiencies lead to a showing of lack of good faith in filing by the debtor and establish cause to dismiss the bankruptcy petition." 22 B.R. at 926, 7 C.B.C. 2d at 312. Again, the present case is one in its infancy, with summons now issued and no substantive estate property decisions having been made; therefore, this court will permit an amendment. Such an amendment should perhaps be strictly limited to cases in their earliest stages of administration, as is this one.

An order will therefore be entered allowing the petitioning general partner to amend its original petition, to issue summons and to obtain service upon the non-filing partner. Maruki's counsel may continue to represent Maruki; however, the order appointing Mr. Gotten to represent Memphis–Friday's Associates will be vacated. The order for relief, entered with the April 30, 1988, filing will be vacated. The stay remains in effect, pending further hearings.