**In re PALLET REEFER COMPANY, Debtor.**

**Bankruptcy No. 98–15601.**

United States Bankruptcy Court, E.D. Louisiana.

March 26, 1999.

Philip K. Jones, Jr., Michael D. Rubenstein, Liskow & Lewis, New Orleans, LA, for Allied Transportation Products, Inc.

Jack M. Alltmont, Sessions & Fishman, New Orleans, LA, Office of the United States trustee.

### REASONS FOR ORDER

JERRY A. BROWN, Bankruptcy Judge.

This matter comes before the court on the motion of Ciana Corporation to dismiss involuntary petition or alternatively, to abstain, and for sanctions.[1] Oral argument was held on the motion on December 2, 1998. The parties have subsequently filed additional memoranda. The court finds that the involuntary petition filed by Allied

---

1. Pl. 4.

Transportation Products ("ATP") is appropriate under 11 U.S.C. § 303(h)(2), and that ATP has standing as a general partner to file the involuntary petition. The court further finds that Ciana has failed to show that abstention under 11 U.S.C. § 305 is warranted in this case. Accordingly, the motion to dismiss is denied, and the order for relief will be entered.

## I. *FACTUAL BACKGROUND*

### A. *The joint venture*

In May 1992, Ciana and ATP formed a joint venture partnership known as the Pallet Reefer Company ("PRC") for the purpose of developing and commercializing a patented product, the Pallet Reefer, which had previously been invented and regionally commercialized by Mr. Louis P. Saia III.[2] Ciana is a Delaware corporation owned by Mr. Saia. ATP is a Delaware corporation owned by Grumman Allied. Grumman Allied is a subsidiary of Northrop Grumman.

The joint venture agreement, dated May 5, 1992, provided that it would be governed by the laws of the state of Delaware.[3] The joint venture agreement also provided that any disputes between the partners would be resolved by arbitration in New York.[4]

### B. *Litigation*

Substantial disputes did arise between the parties and arbitration was commenced in New York between ATP and Ciana. ATP also filed a state court liquidation proceeding against PRC in Delaware state court. In addition, Mr. Saia, Ciana, and another entity controlled by Mr. Saia filed in Louisiana damage suits against Northrop Grumman and Grumman Allied.

The arbitration hearings commenced in June 1996 and finished in April 1997. Before the matter was submitted to the arbitrator for decision, the parties agreed that they would consolidate into the arbitration proceeding all pending disputes between the Saia parties and the Northrop Grumman parties, so that all of the disputes would be decided by the arbitrator.

In June 1997, the parties entered into a formal consolidation agreement, which consolidated the disputes.[5] Part of the agreement was that all of the then-pending lawsuits between the parties would be dismissed, with the arbitrator being vested with authority to resolve those issues among the parties. The consolidation agreement also provided:

> (q) Ciana and ATP stipulate that, pursuant to Paragraph 13(a) of the Joint Venture Agreement, the Joint Venture shall be terminated by mutual agreement of the parties as of the date of the day of the Arbitrator's award. Ciana and ATP submit to the Arbitrator for resolution the question of control and ownership of PRC with the sole limitation that the Arbitrator shall not, as part of any award, determine that PRC shall be jointly controlled, managed or owned by both ATP and Ciana.[6]

On December 2, 1997, the arbitrator rendered his award in favor of the Saia parties and against the Northrop Grumman parties. The arbitrator awarded a judgment totaling the net amount of $17,902,000 in favor of the Saia parties and against the Northrop Grumman parties; ruled that Mr. Saia was entitled to the return of the patents for his invention; and held that after return of the patents to Mr. Saia, the balance of the assets of the former partnership, PRC, would be equally divided between the two former partners, Ciana and ATP.

The Northrop Grumman parties asked that the arbitrator reconsider his award, but the motion was denied.

---

2. Pl. 13, Ex. A.

3. Pl. 13, Ex. A at 19.

4. Pl. 13, Ex. A at 18.

5. Pl. 13, Ex. B.

6. Pl. 13, Ex. B at 4 ¶ (q).

On December 8, 1997, the Saia parties filed suit in the 32nd Judicial District Court, Terrebonne Parish, State of Louisiana for confirmation of the arbitration award. The Northrop Grumman parties opposed confirmation. On March 11, 1998, the 32nd JDC rendered judgment confirming the award.[7] On August 31, 1998, the Northrop Grumman parties appealed the judgment of the 32nd JDC. The order of appeal was entered on September 8, 1998.[8] On September 11, 1998, Northrop Grumman filed its suspensive appeal bond.[9]

The Northrop Grumman parties have paid a total of $16.5 million to the Saia parties, representing approximately 90% of the arbitration award. The Saia parties have filed another lawsuit in Louisiana against the Northrop Grumman parties due to the delay of over six months in returning the patent to Mr. Saia, which lawsuit is still pending.

## C. The liquidator and bankruptcy

After the arbitration award, the parties exchanged correspondence related to the dissolution of the joint venture, and the appointment of a liquidator. The parties were unable to agree on a liquidator or whether the liquidation proceeding would proceed under the supervision of a Delaware or a Louisiana court. ATP filed suit in Delaware to force the appointment of a liquidator in Delaware. Ciana moved for the appointment of a liquidator in the pending proceedings in the 32nd JDC.

The parties then continued their race to the courthouse. In the Delaware Court of Chancery, ATP sought an injunction on July 30, 1998 to prevent Ciana from seeking the liquidation of PRC in any forum other than the Chancery Court. The Vice Chancellor of the Delaware court issued an order on July ·30, 1998 enjoining Ciana from seeking the appointment of a liquidator for PRC in any other court.[10]

Also on July 30, 1998, Ciana filed a motion for appointment of a liquidator with the Louisiana state court.[11] Consequently, on July 30, 1998, the 32nd JDC entered an order: (1) appointing Edmund McCollam as interim liquidator; (2) giving the parties 10 days to agree upon a person to act as the permanent liquidator; and (3) providing that the court would select the liquidator if the parties were unable to agree on a permanent liquidator.[12] Simultaneously with the appointment of the interim liquidator, the 32nd JDC issued an order restraining ATP from seeking the appointment of a liquidator through any court or judicial officer other than the 32nd JDC.[13]

At present, therefore, an interim liquidator exists for PRC under the order of the 32nd JDC, restraining ATP from proceeding with a liquidation in Delaware. Similarly, Ciana is enjoined by the Delaware Court of Chancery from seeking the appointment of a liquidating custodian of PRC in any other court.

ATP, as the general partner for PRC, filed an involuntary bankruptcy petition against PRC on October 16, 1998.

## II. ANALYSIS

### A. Existence of the debtor entity

■ Ciana argues that the debtor entity is no longer in existence and cannot be the subject of a Chapter 7 liquidation because the partnership has been terminated by agreement of the parties. In support of this position, Ciana refers to Article 13 of the joint venture agreement, which states:

13. *Duration and Termination*

The term of the Joint Venture shall be ninety-nine (99) years, unless terminated earlier upon:

---

7. Pl. 13, Ex. C.

8. Pl. 13, Ex. E.

9. Pl. 13, Ex. F.

10. Pl. 13, Ex. H.

11. Pl. 13, Ex. I.

12. Pl. 13, Ex. J.

13. Pl. 13, Ex. K.

a) mutual agreement of the parties; or

b) default under Article 14 hereof.[14]

Ciana also refers to the consolidation agreement, providing that the joint venture would terminate on the date of the arbitration award, which was later rendered on December 2, 1997.[15] Consequently, Ciana contends that there is no debtor entity because PRC terminated on December 2, 1997 under the terms of the joint venture agreement and the consolidation agreement.

■ This argument is without merit. As pointed out by ATP, under Delaware law, the parties' agreement to discontinue their joint venture partnership does not end the partnership, but rather is the change in the relation of the partners so that they are charged with winding up rather than carrying on the business.[16] As stated by the Delaware Chancery Court in *Paciaroni v. Crane,*[17]

> Any partnership, once formed, continues until it is dissolved and its affairs are thereafter wound up. In other words, the four significant events covering the life span of a partnership would appear to be formation, dissolution, winding up and termination. The dissolution of a partnership is defined as the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business. A dissolution, however, does not terminate the partnership. Rather, the partnership continues until the winding up of partnership affairs is completed.

Thus, although the joint venture agreement and the consolidation agreement use the word "terminate", it is a misnomer.

The affairs of PRC have not been wound up. Consequently, the debtor is an existing entity that is eligible for bankruptcy relief.

B. *The requirements of Section 303(h)(2)*

■ Section 303(h) of the Bankruptcy Code, 11 U.S.C. § 303(h), provides two separate grounds for the granting of the order for relief in an involuntary case:

> (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute; or

> (2) within 120 days before the date of the filing of the petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.[18]

In the involuntary petition, ATP pleaded both of these grounds. The memoranda filed by the parties addressed the first ground as to whether PRC has any debts, and whether the debts are being paid as they come due. ATP, however, basically conceded on this issue. The parties agree that the debtor is not insolvent, and in fact has substantial assets. Further, because Ciana has been administering PRC and is in possession of the books, ATP has been unable to show any debts that have not been paid.

ATP contends that the requirements of Section 303(h)(2) are sufficient for this court to enter the order for relief.

The court agrees with ATP. A party need prove only one of the subsections of Section 303(h). In this case, the require-

---

**14.** Pl. 13, Ex. A at 14.

**15.** *supra,* at 3.

**16.** See 6 Del.Code § 1529, which states: "The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carry-

ing on as distinguished from the winding up of the business."

**17.** 408 A.2d 946, 952 (Del.Ch.1979) (citations omitted).

**18.** 11 U.S.C. § 303(b).

ments of Section 303(h)(2) have been satisfied because a liquidator was appointed on July 30, 1998, within 120 days of the filing of the involuntary petition on October 16, 1998. Therefore, the court can enter the order for relief if the other requirements of Section 303 are satisfied.

### C. *ATP's status as a general partner*

■ Section 303(b)(3) of the Bankruptcy Code provides that an involuntary case may be commenced against a partnership under Chapter 7 or 11 by fewer than all of the general partners in the partnership.[19]

Ciana argues that ATP does not meet the requirements of Section 303(b)(3) and does not have standing to file the involuntary petition because it is no longer a general partner of PRC. Ciana contends that the arbitrator's finding that ATP had materially breached and wrongfully terminated the joint venture agreement as of January 1, 1996 triggered the default provisions of Article 14.1 of the joint venture agreement.

The joint venture agreement, entered into by Ciana and ATP in May 1992, provides as follows with respect to defaults:

14.1 A party shall be in default under this Agreement if:

(i) it commits a material breach of its obligations hereunder and such breach remains uncured for thirty (30) days after written notice thereof; ...

14.2 In the event a party is in default under this Agreement as provided in Article 14.1, the rights and obligations of such party hereunder, except as provided in Article 14.3 hereof, shall cease as of the date thereof and the non-defaulting party may, in its sole discretion, do whatever is necessary for the continuance of the business of the Joint Venture, it being understood and agreed that for all purposes the Joint Venture shall continue to exist notwithstanding

the withdrawal of the defaulting party under this Article 14.

14.3 Neither the party in default under this Agreement nor the administrators, trustees, or representatives of such party shall have any right to participate in the administration of the Joint Venture or to any distributions or profits from the Joint Venture.... [20]

Ciana asserts, therefore, that under the terms of the joint venture agreement, ATP lost its "rights and obligations" as a partner as of the date of breach, which is deemed to have been ATP's "withdrawal" from the joint venture.

Ciana also cites the Fifth Circuit case of *In re Phillips*,[21] for the proposition that a partner who is stripped of his obligations as a partner no longer has the status of "general partner" as required by Section 303(b)(3) of the Bankruptcy Code.

ATP responds that the default provisions of Article 14.1 of the joint venture agreement were never invoked because the parties agreed in the consolidation agreement that the joint venture would be terminated by mutual agreement as of the day of the arbitrator's award. ATP further contends that whether a general partner retains a right to manage the affairs of the partnership is irrelevant to its ability to file an involuntary petition. It cites the case of *In re B C & K Cattle Co*,[22] as holding that as long as the general partner is considered to be a member of the partnership after dissolution under state law, it may file an involuntary petition against the partnership.

The court agrees with ATP's position. The consolidation agreement, entered into by the parties in June 1997 provided:

Ciana and ATP *stipulate* that, pursuant to Paragraph 13(a) of the Joint Venture Agreement, *the Joint Venture shall be terminated by mutual agreement of*

---

**19.** 11 U.S.C. § 303(b)(3).

**20.** Pl. 13, Ex. A at 15–16.

**21.** 966 F.2d 926 (5th Cir.1992).

**22.** 84 B.R. 69, 70 (Bankr.N.D.Tex.1988).

*the parties as of the date of the day of the Arbitrator's award.*[23]

The parties agreed in June 1997 that the joint venture agreement would be terminated by mutual agreement as of the date of the day of the arbitrator's award. Therefore, the default provisions of Article 14.1 of the joint venture agreement never came into play. The finding by the arbitrator that ATP materially breached the joint venture agreement as of January 1, 1996 is irrelevant.

The case of *In re Phillips,*[24] does not help Ciana because *Phillips* involved the authority of a partner to file a voluntary petition on behalf of the partnership. *Phillips* held that a partner lacked authority to file a voluntary Chapter 11 petition on behalf of the partnership because he had filed a personal Chapter 11 petition, which under Texas law meant that the partnership was not bound by any of his acts. Here we are concerned with a general partner filing an involuntary petition against the partnership. Furthermore, ATP was never stripped of its status as a general partner under Section 303(b)(3) of the Bankruptcy Code—ATP had authority to act to file an involuntary petition against the partnership.

Ciana argues that this is not a valid basis to distinguish *Phillips* because if a voluntary petition is improperly filed by fewer than all of the partners, it will be treated as an involuntary petition.[25] Ciana contends that although *Phillips* was filed as a voluntary, it was opposed by the other party, and was thus essentially converted to an involuntary petition.

The court disagrees with Ciana's argument. Although the court recognizes that the case law has determined that a voluntary petition improperly filed by fewer than all of the partners will be treated as an involuntary petition,[26] there was no discussion about this in *Phillips.* Instead, the discussion in *Phillips* concerned the authority under Texas law of a general partner who had filed a voluntary petition to act on behalf of the partnership. *Phillips* does not even address Section 303(b) and its specific grant of authority to file an involuntary petition against a partnership.

The facts in the pending case are more similar to the case of *In re B C & K Cattle Co,*[27] involving an ex-partner who filed an involuntary bankruptcy petition against the partnership. *BC & K Cattle Co.* disagreed with the analysis of the *In re Sunset Developers*[28] case, which held that a debtor in possession had no authority to bind the partnership to an involuntary bankruptcy petition. The *BC & K Cattle Co.* court reasoned:

> The Code permits a general partner to file an involuntary petition against a partnership. The Sunset Developers court concluded that a general partner who is a debtor under Chapter 11 may not file an involuntary petition against the partnership because "[d]issolution terminates all authority of any partner to act for the partnership." Under § 303, however, a general partner files an involuntary petition against, not for, the partnership. By filing an involuntary petition against a general partnership, a general partner is acting as an adverse party. As long as the general partner is considered to be a member of the partnership after dissolution under state law, it may file an involuntary petition against the partnership.[29]

---

23. *supra,* at 2 (emphasis added).

24. *supra,* at 9.

25. *See, e.g., In re Memphis–Friday's Associates.,* 88 B.R. 821 (Bankr.W.D.Tenn.1988); 9 *Collier on Bankruptcy* ¶ 1004.03, at 1004–3 (15th Ed.Rev.1998).

26. *See In re Memphis–Friday's Associates,* 88 B.R. 821.

27. 84 B.R. at 70.

28. 69 B.R. 710 (Bankr.D.Idaho 1987).

29. 84 B.R. at 70 [citations omitted].

694

ATP has the status of a general partner to file the involuntary petition. As discussed above, the default provisions of Article 14.1 of the joint venture agreement were never invoked because the parties agreed in the consolidation agreement to terminate the joint venture agreement as of the date of the arbitrator's award. The arbitrator entered his award on December 2, 1997.[30] As of that date, PRC was a joint venture in dissolution, and the partners were charged with winding up and liquidating the affairs of the joint venture. The partnership was not terminated and ATP had not lost its status as a general partner. ATP has standing to file an involuntary petition against PRC.

### D. *Abstention*

■ As an alternative position, Ciana argues that the court should abstain from hearing the case under the provisions of 11 U.S.C. § 305.

Section 305 provides in pertinent part:

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension.[31]

Ciana argues that this is purely a two party dispute between two former partners, and that there are no unpaid third party creditors of PRC and no bankruptcy issues involved. Ciana submits that state court liquidation proceedings are already pending, and that ATP only objected to the liquidation proceedings going forward in Louisiana, but had no objection to the proceedings going forward in Delaware.

ATP responds that this is not a two party dispute, but involves the liquidation of the partnership. The other outstanding disputes between the parties will go forward in state court, and are not related to the liquidation of PRC, a liquidation that both ATP and Ciana agreed would occur upon the arbitrator rendering his judgment.

■ Section 305 gives discretion to the bankruptcy court to abstain from hearing a case where the interests of the parties are best served by the abstention.[32] Because the power of abstention is not reviewable by the courts of appeal in accordance with Section 305(c), courts have determined that abstention under Section 305 is an extraordinary power that is to be used only in extraordinary circumstances.[33] Dismissal is appropriate under Section 305(a)(1) only in the situation where the court finds that "the interests of creditors and the debtor would be better served by such dismissal".[34]

The case of *In re Accident Claims Determination Corp.*,[35] held that in determining whether to dismiss a case, the bankruptcy court should also consider the efficiency and economy of administration. *Accident Claims* further stated that "where adequate remedies lie in the state court, the bankruptcy court is not the appropriate forum for the case".[36] However, according to *In re Manchester Heights Assoc.*,[37] the only test compelled by Section 305 in a purely domestic proceeding is that an abstention must be in the best

30. *supra*, at 3.

31. 11 U.S.C. § 305.

32. *In re Manchester Heights Associates*, 140 B.R. 521, 522 (Bankr.W.D.Mo.1992).

33. *In re Eastman*, 188 B.R. 621, 624 (9th Cir. BAP 1995); *In re Monsour Medical Center, Inc.*, 154 B.R. 201, 207 (Bankr.W.D.Pa.1993); *In re Manchester Heights Assoc.*, 140 B.R. 521, 522–23 (Bankr.W.D.Mo.1992).

34. 11 U.S.C. § 305(a)(1); *In re Eastman*, 188 B.R. at 624.

35. 146 B.R. 64, 67 (Bankr.E.D.N.Y.1992).

36. *Id.*

37. 140 B.R. at 523.

interests of both the debtor and the creditors.

The court finds that abstention is not appropriate in this case. There has been some dispute over whether there are any third party creditors. Because Ciana has been operating PRC, ATP does not have access to the books to determine if there are any creditors. The basis for the bankruptcy, however, is not Section 303(h)(1)—that the debtor is not paying its debts as they become due, but Section 303(h)(2)—a liquidator appointed within 120 days of the petition. The parties have stipulated that PRC is solvent. Therefore, the creditors, if any, are not prejudiced, and their interests will not be affected whether this is a Chapter 7 bankruptcy or a state court liquidation proceeding.

The interests of the debtor favor going forward under Chapter 7. The state court liquidation proceedings are presently stalled, with an injunction in the Delaware court preventing Ciana from going forward in Louisiana, and an injunction in Louisiana preventing ATP from going forward in Delaware. Although the problem of the competing injunctions might be resolved eventually, there is no question that the liquidation will proceed more expeditiously in Chapter 7. The court also disagrees with Ciana's argument that this is merely a two party dispute that can go forward in state court. To the contrary, this case involves the liquidation of PRC. The two party dispute between Ciana and ATP was resolved by the arbitrator's award, which is currently on appeal. Although there has been fallout litigation from that, including Ciana's lawsuit against ATP for failure to timely turn over the patent in accordance with the arbitration award, that is a relatively small part of the parties' dispute. This is not a situation similar to the cases cited by Ciana, involving two party disputes where the underlying issues had not been resolved and state courts were familiar with and used to dealing with the types of issues involved. For example, in the case of *In re Silver Spring Center*,[38] a debtor filed a voluntary Chapter 11 petition to change the forum of a two party dispute then pending in state court between the debtor and a creditor.[39] The court determined that the relationship of the two parties, vis-a-vis their mortgagor-mortgagee status must be resolved before any reorganization was possible. To the contrary, this case involves a liquidation of a joint venture, an area in which the bankruptcy courts have jurisdiction and expertise.

Bankruptcy.courts have abstained in favor of state court liquidation proceedings where the party seeking to invoke bankruptcy jurisdiction has allowed the state proceeding to proceed nearly to completion. For example, the case of *In re Michael S. Starbuck, Inc.*,[40] cited by Ciana, held that because the receiver had spent over 1,400 hours on the case, had incurred costs, and had already begun the liquidation process, it would have been a waste of time and resources to proceed under Chapter 7. That is not the case here because the liquidator has taken no action toward liquidating PRC.

This is also not a situation where one party filed for bankruptcy to gain leverage in a state court proceeding. In the case of *In re Westerleigh Development Corp.*,[41] a fifty percent shareholder filed an involuntary Chapter 11 petition against the corporation, which owned one asset, a vacant lot. The court held that abstention was appropriate because two state court actions were pending to determine the status of the vacant lot. Similarly, in the case of *In re*

**38.** 177 B.R. 759 (Bankr.D.R.I.1995).

**39.** *See also In re Fitzgerald Group*, 38 B.R. 16 (Bankr.S.D.N.Y.1983) (Abstention not appropriate in a voluntary Chapter 11 case filed by a dissolved partnership, when there was nothing to be reorganized).

**40.** 14 B.R. 134 (Bankr.S.D.N.Y.1981).

**41.** 141 B.R. 38 (Bankr.S.D.N.Y.1992).

*Beacon Reef Limited Partnership,*[42] the sole limited partner had a dispute concerning the partnership, which was being managed by its two general partners. The court abstained, finding that the involuntary petition was no more than a claim made by a single disgruntled investor, and that adequate remedies were available at state court.

ATP is not attempting to gain leverage over Ciana by bringing this Chapter 7 proceeding on behalf of PRC. A liquidation of PRC has already been ordered and agreed upon by the parties. A valid basis for entry of the order for relief exists under Bankruptcy Code Section 303(h)(2) because a liquidator was appointed within 120 days of the filing. Congress has authorized this court to liquidate a partnership. While ATP and Ciana do not agree on many issues, their various disputes will not be affected by a liquidation of the assets of PRC in this forum. Rather, the involuntary petition seeks to perform one of the express purposes of Chapter 7—the liquidation of the assets of an entity. It is in the best interest of PRC, the debtor, that it be liquidated as expeditiously as possible. This court is convinced that it can do just that, and can do it more expeditiously than the state courts of either Delaware or Louisiana. Finally, Ciana's argument that ATP only objects to liquidation by the Louisiana state court but does not oppose a liquidation in Delaware is irrelevant.

Ciana has failed to show that extraordinary circumstances exist in this case sufficient to justify the court using the extraordinary power of Section 305 to abstain from the case. A separate order will be entered.

### ORDER FOR RELIEF UNDER CHAPTER 7

For the reasons assigned in the foregoing reasons for order issued this date,

**IT IS ORDERED** that the motion of Ciana Corporation to dismiss involuntary petition or alternatively, to abstain, and for sanctions is **DENIED.**

**IT IS FURTHER ORDERED** that relief under Chapter 7 of the Bankruptcy Code is **GRANTED** against **PALLET REEFER COMPANY.**

**IT IS FURTHER ORDERED** that **PALLET REEFER COMPANY** shall file a mailing matrix within 5 days of entry of this order.

**IT IS FURTHER ORDERED** that **PALLET REEFER COMPANY** shall file a Statement of Affairs and Schedules showing all assets and liabilities and shall provide a copy to the U.S. Trustee, Region V, within 15 days of entry of this order.

**IT IS FURTHER ORDERED** that **PALLET REEFER COMPANY** shall comply with all provisions of the Bankruptcy Code and Rules.

**IT IS FURTHER ORDERED** that the United States Trustee appoint a Trustee in this case.

---

42.   43 B.R. 644 (Bankr.S.D.Fla.1984).